**ASSASSINATION ARCHIVES AND RESEARCH CENTER, INC., Plaintiff,**

**v.**

**CENTRAL INTELLIGENCE AGENCY, Defendant.**

**Civ. A. No. 88–2600.**

United States District Court, District of Columbia.

Sept. 11, 1989.

Daniel S. Alcorn, Vienna, Va., and James H. Lesar, Washington, D.C., for plaintiff.

Nathan Dodell, Washington, D.C., for defendant.

MEMORANDUM

REVERCOMB, District Judge.

Plaintiff submitted a Freedom of Information Act ("FOIA") request seeking all Central Intelligence Agency ("CIA") information on George Herbert Walker Bush which reflects any relationship between Mr. Bush and the CIA prior to his term as Director of Central Intelligence, as well as any documents regarding the assassination of President Kennedy that were reviewed by Mr. Bush while he was Director of Central Intelligence.

The case is currently before the Court on cross-motions for summary judgment. Plaintiff has requested the Court to order additional searches, while defendant has filed a motion based on the arguments that further searches would be unreasonably burdensome, and that the responsive documents withheld under the present request were withheld properly under exemptions to FOIA. Defendant claimed the protection of exemptions (b)(1), (b)(3), (b)(5), and (b)(6) of FOIA to withhold these documents and excisions. The Court has inspected the withheld documents *in camera.*

Defendant states in its motion that all "searchable material deemed non-exempt under the FOIA has been provided to plaintiff," and has moved for summary judgment on the grounds that plaintiff's FOIA request did not reasonably describe the records sought, and that some documents are being withheld validly under FOIA exemptions (b)(1), (b)(3), (b)(5), and (b)(6).

Plaintiff opposes the motion for summary judgment, has filed a cross-motion for partial summary judgment, and seeks to compel a further search. Plaintiff argues that CIA has not shown that it conducted a proper search, and that it has failed to produce or justify withholding all the materials it did locate.

With regard to plaintiff's motion that the Court order additional searches, the Court notes that it is the requester's responsibility to frame requests with sufficient particularity to ensure that searches are not unreasonably burdensome, and to enable the searching agency to determine precisely what records are being requested. *Yeager v. DEA,* 678 F.2d 315 (D.C.Cir. 1982). The rationale for this rule is that FOIA was not intended to reduce government agencies to full-time investigators on behalf of requesters. Therefore, agencies are not required to maintain their records or perform searches which are not compatible with their own document retrieval systems. *Blakey v. Department of Justice,* 549 F.Supp. 362 (D.D.C.1982), *aff'd* 720 F.2d 215 (D.C.Cir.1983) (modified on other grounds). "The linchpin inquiry is whether the agency is able to determine 'precisely what records [are] being requested.'" *Yeager v. DEA,* 678 F.2d 315, 326 (D.C.Cir. 1982).

Plaintiff argues that CIA has not conducted a proper search because government agencies under FOIA are required to show that they have conducted a thorough, good faith search, including detailing the scope of the search and the manner in which it was conducted. *Weisberg v. Dept. of Justice,* 627 F.2d 365 (D.C.Cir.1980). Under *Weisberg,* agency affidavits which "do not denote which files were searched or by whom, do not reflect any systematic approach to document location, and do not provide information specific enough to enable [the requester] to challenge the procedures utilized," are insufficient to support summary judgment on the search issue. 627 F.2d at 373.

Plaintiff argues that even if the Court were to find that the search in this case met the *Weisberg* standard, it has produced countervailing evidence of the inadequacy of the search, since plaintiff can produce a document which it obtained independently, i.e., a November 29, 1963 memorandum from J. Edgar Hoover to the Director of the Bureau of Intelligence and Research at the State Department, which plaintiff claims would have been among the documents located in a good faith search responsive to its request. Plaintiff correctly points out that even if an agency complies with *Weisberg,* "the requester may nonetheless produce countervailing evidence, and if the sufficiency of the agency's identification or retrieval procedure is genuinely in issue, summary judgment is not in order." *Founding Church of Scientology v. National Security Agency,* 610 F.2d 824 (D.C.Cir.1979).

Defendant's response to this argument was to submit a supplemental affidavit detailing the search, and to point out that the legal standard for evaluating a search is not "whether there might exist any other documents possibly responsive to the request, but rather whether the *search* for those documents was *adequate.*" *Weisberg,* 745 F.2d at 1485. While plaintiff argues that the fact that CIA's search did not produce the November 29, 1963 memorandum shows that the search was inadequate, defendant argues that it does not show this, since CIA failed to locate *any* documents responsive to Item 1 of plaintiff's FOIA request, which asked for "all personnel or other records which reflect a relationship between the CIA and George Herbert Walker Bush ... prior to his term as Director of Central Intelligence." CIA further argues that the document, which was generated by the FBI and sent to the State Department, with only a copy being sent to the DCI, need not necessarily have been retained or filed at CIA. Finally, even if the document was received and filed at CIA, it need not have been filed in such a manner as to be retrievable by a search looking for information as described in plaintiff's Item 1. Haran Declaration ¶ 28.

Plaintiff's motion was based in part on the alleged inadequacy of the affidavit of Lee Carle, which plaintiff argues gives no indication as to which files were searched or by whom, and fails to proved information specific enough to enable plaintiff to

challenge the procedures used in the search, for example, whether a computer or manual search was made, or how many components of the CIA were searched. The actual mechanics of the search have been fleshed out adequately in a supplemental declaration.

Accordingly, the Court will not order additional searches. The breadth of plaintiff's requests is not compatible with the CIA's document retrieval system, and plaintiff must deal with that system as it is. The Court is satisfied by the Haran Declaration that CIA's search met the *Weisberg* standard for an adequate search within the constraints of the CIA's document retrieval system as it presently exists. Therefore, plaintiff's motion will be denied.

With respect to defendant's motion for summary judgment: after *in camera* inspection of the 19 documents withheld in whole or in part, the Court concludes that the exemptions claimed for those documents in the Carle Declaration are claimed legitimately, and that the reasons given in the Declaration are a proper use of the FOIA exemptions. The Court is also satisfied that no meaningful segregation or description of the documents at issue can be made.

1. Exemption 5.

Exemption 5 excludes from mandatory disclosure matters that are "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." It has been invoked by CIA for Document No. 2, which as described in the *Vaughn* index is a 3-page memorandum for the record dated June 14, 1976; this document has been withheld in its entirety. The burden the agency must carry to withhold materials under this "deliberative process" rule is to show that "the document is so candid or personal in nature that public disclosure is likely in the future to stifle honest and frank communications within the agency." *Coastal States Gas Corp. v. Department of Energy,* 617 F.2d 854, 866 (D.C.Cir.1980). To fall within the deliberative process privilege, the communication must be "pre-decisional" in that sense that it must be "antecedent to the adoption of agency policy." *Jordan v. Department of Justice,* 591 F.2d 753, 774 (D.C.Cir.1978). The agency has the burden of establishing what deliberative process is involved and the role played by the documents at issue in the course of that process. *Vaughn v. Rosen,* 523 F.2d 1136, 1146 (D.C.Cir.1975). In effect, this means that in order to be exempt under Exemption 5, documents must have been a part of the decision-making process. *Id.* at 1144. Plaintiff argues that the Carle Affidavit fails to provide a basis for the court to "pinpoint an agency decision or policy to which the document contributed." *Paisley v. CIA,* 712 F.2d 686, 698 (D.C.Cir.1983) *vacated in part on other grounds,* 724 F.2d 201 (D.C.Cir.1984). This, plaintiff argues, is because the Carle Affidavit fails to specify the relevant final decision of which Document No. 2 formed part of the deliberative process, nor does it describe the role played by that document in the process itself. In addition, plaintiff complains that CIA has failed to show that the information contained in the document "is so candid or personal in nature that public disclosure is likely in the future to stifle honest and frank communication within the agency." *Coastal States,* 617 F.2d at 866. Finally, plaintiff argues that there is segregable "factual" information contained in Document No. 2, on the grounds that the Carle Affidavit states that the information withheld under Exemption 5 shows that "senior Agency officials were apprised of the Congressional inquiries and the questions raised concerning Agency policy…." This, plaintiff contends, shows that there is purely factual information contained in the document, although the Carle Affidavit states also that there is no "meaningful" factual information which could be segregated and given to plaintiff.

In response, defendant points out that Exemption 5 was intended to incorporate into FOIA the common law governmental privilege from discovery in litigation, including the deliberative process. CIA argues that Document No. 2 reflects the predecisional deliberative process whereby senior CIA officials were apprised of Congressional inquiries into U.S. intelligence

agencies' support provided to the Warren Commission, including opinions expressed concerning CIA policy matters generated by the Congressional inquiries, leading to recommendations. Carle Declaration, ¶ 31. After *in camera* inspection of this document, the Court concludes that Exemption 5 was properly applied to this document, and that the Carle Declaration was accurate.

2. Exemption 6.

CIA claims that certain information contained in Document No. 7 is excluded under Exemption 6 which exempts from FOIA matters that are "personnel and medical files and similar files, the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." The Carle Affidavit states that this material consists of "a summary of personal information contained in a security file, compiled for purposes of determining [a person's] suitability for access to classified information," and adds that disclosure would violate the personal privacy of the subject "by revealing details of their actions and whereabouts."

Plaintiff argues that details of actions and whereabouts are not the sort of information likely to "subject the person to whom they pertain to embarrassment, harassment, disgrace, loss of employment or friends." *Brown v. Federal Bureau of Investigation,* 658 F.2d 71, 75 (2d Cir.1981). After *in camera* inspection, the Court finds that the Carle Declaration properly applied exemption 6. The information contained in Document No. 7 would constitute an unwarranted invasion of an individual's privacy. CIA claimed to have balanced the public interest in disclosure against the degree of intrusion into the privacy of the individual named in the document. The information being withheld is a summary of personal information contained in a security file, compiled for purposes of determining the person's suitability for access to classified information; Carle evidently considered that the requester's interest was primarily for information on George Bush, so that information concerning the personal details of other persons would be "slight." Carle was unable to specify any overriding public interest which would require disclosing the information pertaining to this individual. Lastly, Carle determined that the nature of the information is such that disclosure would violate the privacy of the person concerned. The Court agrees with these conclusions.

3. Exemptions 1 and 3.

These exemptions are being used by CIA to withhold information pertaining to intelligence sources and methods. Exemption 1 permits withholding of matters that are "(A) specifically authorized under criteria established by an Executive Order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive Order." This means that in order to withhold information under this exemption, the agency must demonstrate that the classification of the document meets both the procedural and substantive criteria of the executive order. *Allen v. Central Intelligence Agency,* 636 F.2d 1287 (D.C.Cir. 1980).

CIA is withholding information under color of Executive Order 12356, which is the most recent order on classification for purposes of national security. Section 1.3(a)(4) of E.O. 12356 lists "intelligence sources" or "methods" as among the substantive categories of information subject to classification. The Order also states that information in those categories shall be classified if "its unauthorized disclosure ... reasonably could be expected to cause damage to the national security," defined (§ 6.1(e)) as "the national defense or foreign relations of the United States."

Essentially, plaintiff's argument is that the information it seeks is *old.* It also argues that CIA's claims that national security will be damaged by release are too broad, and are simply conclusory. This argument prevailed in *King v. Department of Justice,* 830 F.2d 210 (D.C.Cir.1987), where the Court of Appeals reversed the District Court for deferring to the agency's judgment that the sensitivity of old information had not diminished with age.

However, defendant responds that intelligence sources and methods cannot be ade-

quately protected, and CIA cannot perform its function, unless sources are secure in the knowledge that their identity will be protected forever. Carle Supplemental Declaration ¶ 6–12. This provides an adequate basis for distinguishing the *King* case upon which plaintiff relies, because that case concerned the Department of Justice rather than the CIA, and the security requirements of an intelligence agency are uniquely different from those of other agencies, including, reasonably, the expectation that more time must elapse before identities and methods can be revealed safely. Furthermore, *King* was decided not under Executive Order 12356 but under Executive Order 12065, its predecessor. Executive Order 12356 is more protective of classified information than 12065 was, which might affect the holding of cases like *King.*

Exemption 3 is being invoked simultaneously with Exemption 1 to protect the same documents. The use of Exemption 3 in this case is based on the National Security Act of 1947, which provides that "the Director of Central Intelligence shall be responsible for protecting intelligence sources and methods from unauthorized disclosures." Plaintiff argues that CIA has exceeded the broad mandate of this statute by including all "sources," not just sources which provide information concerning "foreign intelligence." For example, Document No. 11 contains a note on a *Washington Star* article about the Kennedy assassination which deletes the name of someone at that paper; defendant has deleted this information solely on the grounds that it could identify a "source." Plaintiff argues that this sort of information is neither "intelligence" nor related to foreign affairs, and that therefore the National Security Act does not instruct the Director of Central Intelligence to protect this information.

Defendant responds by arguing that the information contained in the documents sought to be exempted under Exemption 1 fall into the following general categories of information which permit classification under E.O. 12356:

1. Information concerning intelligence sources or methods;

2. Information concerning intelligence activities;

3. Information concerning foreign relations or foreign activities of the United States.

The specific matters at issue here are currently classified at the Secret or Confidential level. Carle Declaration ¶ 10. CIA argues that disclosure of such information could reasonably be expected to damage national security. After inspection of the documents, the Court finds that this assessment is correct. CIA argues that it has met the criteria for Exemption 1 because it has followed the criteria of the Executive Order with respect to properly classified documents. Courts have generally deferred to the expert opinion of the CIA on such matters, on the rationale that judges "lack the expertise necessary to second-guess such agency opinions in the typical national security FOIA case." *Military Audit Project v. Casey,* 656 F.2d 724, 738 (D.C.Cir.1981).

CIA argues that it has asserted Exemption 1 to protect intelligence methods and sources, cryptomyms, information which would reveal covert CIUA field installations and foreign intelligence activities, employee names, official titles, organizational data, etc. As described in the Carle Affidavit, the documents do fall within the criteria for classification of E.O. 12356. After inspection, the Court concurs with the Carle Declaration.

The Court finds that exemption 3 also covers these items, since the information concerns intelligence sources and methods, or CIA organizational and functional information. Exemption 3 protects information which is "specifically exempted from disclosure by statute." In this case, as defendant argues, two separate statutory provisions operate to bring this information under Exemption 3: the provisions of the National Security Act of 1947 mentioned above, and a later provision, 50 U.S.C. § 403g which provides that CIA shall be exempt from the provisions of any other law requiring the publication or disclosure of the organization, functions, names, official titles, salaries, or numbers of personnel employed by it.

This provision seems to apply to all CIA information even if it cannot be linked specifically to "foreign" intelligence or "foreign" sources, as with the *Washington Star* source at issue here. The same is true of the Executive Order's three provisions listed above. After *in camera* inspection, the Court concludes that these statutory provisions were properly invoked.

Therefore, plaintiff's Motion for Partial Summary Judgment is DENIED. Defendant's Motion for Summary Judgment is GRANTED.