**THE NATION MAGAZINE,
et al., Plaintiffs,**

**v.**

**DEPARTMENT OF STATE,
et al., Defendants.**

Civ. A. No. 92–2303 (JHG).

United States District Court,
District of Columbia.

Oct. 23, 1992.

Katherine A. Meyer, Eric R. Glitzenstein, Harmon, Curran, Gallagher & Spielberg, Washington, D.C., for plaintiffs.

Elizabeth A. Pugh, Michael J. Haungs, Civ. Div., Federal Programs Branch, U.S. Dept. of Justice, Washington, D.C., for defendants.

## MEMORANDUM OPINION AND ORDER

JOYCE HENS GREEN, District Judge.

Plaintiffs *The Nation* magazine and Max Holland, a contributing editor to *The Nation,* commenced this action on October 14, 1992 by filing a complaint which alleges that defendants have violated the Freedom of Information Act ("FOIA"), the Administrative Procedure Act ("APA"), and the First Amendment by denying expedited access to federal records concerning independent Presidential candidate H. Ross Perot even though, according to plaintiffs, expedited access to records concerning Democratic Presidential candidate Bill Clinton had been granted. On Friday, October 16, 1992, plaintiffs filed a motion for a temporary restraining order. With the consent of counsel, a briefing schedule for the motion was set and a hearing scheduled for October 20, 1992. Plaintiffs' counsel were ordered to notify H. Ross Perot, the subject of plaintiffs' FOIA requests, or his counsel, of this action and of the hearing. On October 22, 1992, two days after the hearing, plaintiffs filed as an additional exhibit to their motion for a temporary restraining order an article from that day's *Washington Post* concerning relevant State Department activities. The government filed a brief response thereto. Upon consideration of all filings made in this case and of the arguments made at the hearing, plaintiffs' motion for a temporary restraining order is denied.

## BACKGROUND

By separate letters dated June 22, 1992, plaintiff Max Holland asked the Central Intelligence Agency ("CIA"), the Department of Justice ("DOJ"), the Department of Defense ("DOD"), and the Department of State to release certain documents concerning H. Ross Perot. At the time of the request, Mr. Perot was an independent candidate for President and enjoyed popular support of a magnitude apparently not possessed by any previous independent Presidential candidate in recent history.[1] *The Nation* had written extensively about Perot and was "eager to include additional articles ... to contribute to ongoing public debate about his qualifications to become President of the United States." Plaintiffs' Motion for a Temporary Restraining Order at 2.

The CIA's first response to Holland's FOIA request was a letter dated August 7, 1992 which requested that he furnish a notarized statement from Mr. Perot authorizing the release of personal information. Holland informed the CIA on August 24, 1992 that he could not provide such a release but indicated his belief that any privacy exemption should be applied sparingly in light of Mr. Perot's national prominence, and requested release of all documents not exempt on grounds of privacy. Not having received a response to his August 24, 1992 letter, Holland hand-delivered to the CIA on October 8, 1992 a request for expedited processing in which he asserted an urgent need for access to Perot documents in light of the upcoming Presidential election, to be held November 3, 1992. By letter dated October 9, 1992, the CIA informed Holland that it would not expedite his request, stating that it granted requests for expedition only in the rare instances where health and humanitarian considerations create circumstances of exceptional urgency and extraordinary need and that his request did not satisfy those criteria.

---

1. Mr. Perot withdrew as a Presidential candidate on July 16, 1992 but subsequently reentered the race.

On July 7, 1992, DOJ informed Holland that it had referred his request to several of its components, including the Federal Bureau of Investigation ("FBI"). The FBI acknowledged Holland's request in a letter dated July 21, 1992. Though Holland requested on October 8, 1992 that the FBI expedite its processing of his request, Holland asserts that he has not yet received a response.

The DOD advised Holland in a letter dated July 13, 1992 that a search of the files of the Office of Deputy Assistant Secretary of Defense for POW/MIA Affairs revealed no responsive records and informed him that his request had been forwarded to the Defense Investigative Service ("DIS") and the Defense Intelligence Agency ("DIA"). At a time unknown to the Court, DIS indicated that it possessed documents responsive to Holland's request but advised him that because of applicable privacy exemptions, it would not release any records pertaining to Mr. Perot without proper authorization. On October 8, 1992, Holland told DIS that he could not obtain Mr. Perot's consent to release of the documents and requested expedited processing of his request for all non-exempt segregable records in light of the imminent election.

The Department of State initially responded to Holland's request by sending a letter on July 1, 1992, informing him of its need to know whether he intended to pay processing fees before it could provide him with the requested records. Holland responded on July 9, 1992 by stating that *The Nation* agreed to pay the cost of reproducing documents retrieved as a result of his request, but that the magazine reserved the right to demand a waiver of all processing fees depending on the nature of the documents obtained. Not having received any further response from the Department, Holland sent by messenger a request for expedited processing. In his request, Holland stated his belief that the news media had been provided expedited access to Mr. Clinton's passport records and asserted that the agency should not withhold similar types of records relating to Mr. Perot. Counsel for Mr. Holland related to the De-

partment that Mr. Holland would consider the failure to respond by October 13, 1992 to his request for expedition a denial of the request and would cause Holland to seek immediate judicial review. The Department did not respond by the 13th and plaintiffs commenced this action the next day.

In September or October, 1992, a time when rumors were circulating among the national press that Democratic candidate Bill Clinton may have sought to renounce his United States citizenship to avoid military service in the Vietnam War, and a time when campaign activities were becoming more intense, State Department agents expedited the processing of three FOIA requests concerning Governor Clinton's draft status, his student visas, and his citizenship. *See* Declaration of Frank M. Machak, the State Department's Information and Privacy Coordinator and Director of the Department's Office of Freedom of Information, Privacy, and Classification Review, attached to defendants' Memorandum in Opposition to Plaintiffs' Motion for a Temporary Restraining Order. Those requests, filed by ABC News, the Associated Press, and Hearst Newspapers, were made months after plaintiffs made their requests for Perot-related documents. When questioned about the propriety of expediting the processing of the Clinton requests, State Department spokesman Richard Boucher initially defended the Department's actions, stating on October 14, 1992, "You're all aware of the time limits in the law that do require [the processing of the Clinton requests] to be—expeditiously, and I don't feel comfortable thinking that I should come up here and apologize for people trying to have met the law." Exhibit W to plaintiffs' Motion for a Temporary Restraining Order at 5. Mr. Boucher further stated, "Obviously we're aware of the fact that journalists are asking for [the Clinton information] and they obviously don't want to get it in March." *Id.* at 7. Notwithstanding these statements, however, the State Department did not expedite the processing of numerous other FOIA requests for documents concerning President Bush, Vice President Quayle, Senator Gore, Mr.

Perot, and Admiral Stockdale, including the requests made by the plaintiffs. Declaration of Frank M. Machak at 24.[2]

In a press conference held October 15, 1992, Mr. Boucher changed his position on the propriety of the expedited actions and acknowledged that the treatment given to the Clinton-related requests was wrong and contrary to State Department policy and law. Exhibit 7 to Declaration of Frank M. Machak. Mr. Boucher stated that the notations made on internal memoranda ordering expedition of the Clinton requests were "clearly a mistake" and were made by "clerks—mid-level people who process applications, who take papers and write memos and send them on," Exhibit 7 to Declaration of Frank M. Machak at 4.

At the hearing on the motion for a temporary restraining order, government counsel vehemently represented that although the initial processing of the Clinton requests was mistakenly expedited, the mistakes were discovered before *any* responsive documents were made available. Counsel further represented that the State Department "de-expedited" the three Clinton requests by returning them to their proper position in the queue and processing them on a first-in, first-out basis, like all other State Department FOIA requests. Accordingly, counsel contends that no disparity between the Clinton and Perot requests has resulted from the State Department's alleged blunders. Much to the detriment of a complete record in this case and, therefore, to the Court's frustration, counsel for the defendants refused to report, upon inquiry of the Court, when the decisions to expedite were made, whether they were made by high-level or low-level officials, and whether they were the result of policy or administrative carelessness. Counsel stated she could not respond to the Court's questions on this matter because Acting Secretary of State Lawrence S. Eagleburger has called for the Inspector Gen-

eral to investigate the matter.[3] As a result, the Court is uninformed of the timeframes for the completion of the Inspector General's investigation and for the reporting of the findings and conclusions resulting from the investigation.

Plaintiffs' counsel fervently challenged the veracity of the claims of Mr. Boucher and Mr. Machak that the expedited processing was the result of mistakes made by mid-level or low-level clerks. Counsel contended that the Department's expeditious treatment of three separate FOIA requests concerning only Governor Clinton and relating only to that candidate's draft status, citizenship, and student visa status indicated that the decision to expedite was the result of a policy set by high-level officials. In support of that contention, plaintiffs' counsel filed on October 22, 1992 an article from that morning's *Washington Post* which reported that the Chief of Program Support Services for the Department's Office of Passport Services, the Acting Deputy Assistant Secretary for Passport Services, and a political appointee working for the Assistant Secretary for Consular Affairs expedited the processing of FOIA requests concerning Governor Clinton and his mother and, with National Archives employees, personally searched boxes of documents stored at the National Records Center in Suitland, Maryland. The article indicated that the search was not related to the three FOIA requests which the State Department has admitted expediting. When given the opportunity to respond to the allegations made in the *Post*, government counsel called the article "irrelevant" hearsay and stated:

> the State Department is not yet in a position to advise the Court about the precise facts surrounding the temporary expedition of three FOIA requests seeking information on Governor Bill Clinton. In order to establish the facts, as well as

---

2. According to defendants, the following FOIA requests are still pending before the State Department: 16 requests concerning President Bush, 8 concerning Governor Clinton, 5 concerning Mr. Perot, 2 concerning Vice President Quayle, 1 concerning Senator Gore, and 1 con-

cerning Admiral Stockdale. Defendants' Opposition to Plaintiffs' Motion for a Temporary Restraining Order at 5.

3. Interestingly, the investigation was not initiated until after this lawsuit commenced.

to determine whether there was any misconduct, Secretary Eagleburger has asked the State Department Inspector General to conduct an investigation.

Defendants' Response to Plaintiffs' Notice of Filing of Additional Exhibit at 1.

## DISCUSSION

 A temporary restraining order may be granted only when the plaintiff demonstrates (1) a substantial likelihood of success on the merits; (2) that irreparable injury will result in the absence of the requested relief; (3) that no other parties will be harmed if temporary relief is granted; and (4) that the public interest favors entry of a temporary restraining order. *Washington Metropolitan Area Transit Commission v. Holiday Tours, Inc.*, 559 F.2d 841, 843 (D.C.Cir.1977). This test is not a wooden one, for as our court of appeals has noted, relief may be granted "with either a high probability of success and some injury, or *vice versa.*" *Cuomo v. United States Nuclear Regulatory Commission*, 772 F.2d 972, 974 (D.C.Cir.1985) (per curiam) (emphasis in original). *See also Holiday Tours*, 559 F.2d at 843.

Plaintiffs have failed to establish a substantial likelihood of success on the merits. Title 5, United States Code, Section 552(a)(6) directs an agency receiving a FOIA request to determine within ten days whether to comply with such a request and to notify immediately the person making the request of such determination, of the reasons therefor, and of the right to appeal to the head of the agency any adverse determination. Under subsection (a)(6)(B), however, if certain "unusual circumstances" as defined by the statute exist,[4] the ten day deadline may be extended for an additional ten days by providing written notice to the person or entity placing a request.

If an agency fails to comply with the above-mentioned time requirements, the person or entity making the request may file suit in federal court before exhausting administrative remedies. *See* 5 U.S.C. § 552(a)(6)(C). While a court having jurisdiction may order the production of any agency records improperly withheld from the complainant, *see* 5 U.S.C. § 552(a)(4)(B), a court also has the authority, upon a finding of "exceptional circumstances" and "due diligence" by the agency, to retain jurisdiction and allow the agency additional time to complete its review of the requested records. *See* 5 U.S.C. § 552(a)(6)(C). In the landmark case of *Open America v. Watergate Special Prosecution Force*, 547 F.2d 605 (D.C.Cir.1976), this Circuit held that Congress' inclusion of the term "exceptional circumstances" makes the time periods prescribed in subsection (a)(6)(A) "not mandatory but directory" and, unless "due diligence" by the agency does not exist, or unless "exceptional need or urgency" for requested documents is shown, an agency may process pending requests on a first-in first-out basis, even if such an approach results in delays longer than the period provided by statute. *Open America* at 616.

All four defendants have established through affidavits that they are deluged with FOIA requests and that they are doing their best to process all requests in a timely manner.[5] Therefore, "exceptional circumstances" and "due diligence" exist in this case, and unless "exceptional need or urgency" is shown, or unless some statutory or constitutional provision requires otherwise, each defendant is entitled to process plaintiffs' FOIA requests on a first-in first-out basis.

Plaintiffs concede that the CIA, DOJ, and DOD, unlike the Department of State, have complied fully with their respective regulations delineating when requests

---

4. "Unusual circumstances" include "the need to search for and collect the requested records from field facilities," "the need to search for, collect, and appropriately examine a voluminous amount of separate and distinct records which are demanded in a single request," and "the need for consultation ... with another agency having a substantial interest in the deter-

mination of the request." 5 U.S.C. § 552(a)(6)(B)(i), (ii), (iii).

5. According to affidavits filed by defendants, the FBI has over 9,000 pending FOIA requests and the State Department has almost 3,800 such requests.

should be processed on a first-in first-out basis. Plaintiffs also concede that those three defendants did not give unfair treatment to any FOIA request concerning a Presidential or Vice Presidential candidate. Mr. Holland and *The Nation,* however, ask this Court to find that the media's strong and significant desire for access to records necessary to inform the public about political candidates constitutes an "exceptional need or urgency" as discussed in *Open America* and, therefore, that the agencies and components thereof must temporarily abandon their first-in first-out processing scheme to give top priority to the processing of plaintiffs' requests. Such a finding is neither warranted under the applicable law, nor is it wise.

Only rarely have courts found the existence of "exceptional need or urgency" and the few cases in which courts have ordered an agency to abandon its first-in first-out processing usually involved parties facing deportation or criminal trial involving murder or another serious felony. *See, e.g., Ray v. Department of Justice,* 770 F.Supp. 1544 (S.D.Fla.1990); *Cleaver v. Kelley,* 427 F.Supp. 80 (D.D.C.1976). At least one court has recognized that the need for information for use in civil litigation is insufficient to require expedition, *see, e.g., Ferguson v. F.B.I.,* 722 F.Supp. 1137 (S.D.N.Y. 1989), and it has been held on several occasions that publishing deadlines do not constitute "exceptional need or urgency." *See, e.g., Lisee v. C.I.A.,* 741 F.Supp. 988 (D.D.C.1990); *Summers v. Department of Justice,* 733 F.Supp. 443 (D.D.C.1990), *appeal dismissed,* 925 F.2d 450 (D.C.Cir. 1991). In addition, and perhaps most relevant to the case *sub judice,* this Court declined to order the CIA to expedite a FOIA request concerning George Bush and his alleged connection to the Kennedy assassination even though the 1988 Presidential election was imminent and though the plaintiff argued that the information

sought should be disseminated to the public before voters cast their ballots. *Assassination Archives and Research Center, Inc. v. C.I.A.,* 720 F.Supp. 217, 218–19 (D.D.C.1988) (Revercomb, J.), *expedited consideration and summary reversal denied,* No. 88–5315 (D.C.Cir. October 13, 1988). As discussed in the paragraphs which follow concerning harm to third parties and the public interest, there are numerous reasons why this Court should not broaden the definition of "exceptional need or urgency" to include FOIA requests concerning Presidential candidates pending weeks before an election.

While plaintiffs clearly have a stronger case against the Department of State, they have failed to establish a substantial likelihood of success in their claims against that defendant. Unquestionably, expedition of the Clinton requests was not warranted under the standards set forth in *Open America* and, as counsel for the defendants concedes, clearly violated State Department regulations.[6] As the Third Circuit articulated, however, no rule of administrative law requires an agency to extend erroneous treatment of one party to other parties, "thereby turning an isolated error into a uniform misapplication of the law." *Sacred Heart Medical Center v. Sullivan,* 958 F.2d 537, 548 n. 24 (3rd Cir.1992). Had *any* documents relating to the Clinton requests been released, had the Department of State continued to provide expedited review of Clinton FOIA requests after it discovered its alleged mistakes, or had the Department not returned the Clinton requests to their proper places in the queue, it is likely that the FOIA, or the APA, or the First Amendment, or a combination thereof, would have required the State Department to expeditiously process plaintiffs' requests. Given government counsel's ardent representations that *no* documents were released, that the Department

---

6. The provision governing when the State Department should expedite a FOIA request provides:

 The Department will consider requests for expeditious handling whenever the requester can demonstrate one of the following: (1) An individual's life or personal safety would be

jeopardized by the failure to process a request immediately, or (2) Substantial due process rights of the requester would be impaired by the failure to process immediately, and the information sought is not otherwise available. 22 C.F.R. § 171.12(b).

has terminated any and all practices of expediting Clinton FOIA requests, and that any time advantages initially enjoyed by those who made the Clinton requests have been remedied, and given plaintiffs' failure to prove otherwise, ordering the Department of State to expedite plaintiffs' Perot requests is neither required nor merited.

■ Besides failing to show a substantial likelihood of success on the merits, plaintiffs have not established that the absence of emergency relief would result in irreparable injury. Even if this Court were to direct the speed up of the *processing* of their requests, Mr. Holland and *The Nation* have not shown at this time that they are entitled to *release* of the documents they seek. To the contrary, it is undisputed that at least some of the documents requested by plaintiffs are probably exempt from production under the FOIA, and plaintiffs have failed to obtain from Mr. Perot the waivers which might have proved necessary for release of that information.[7] Of course, this Court likely will be asked, after processing is completed, to make a final determination of the validity of any exemptions claimed by the defendants regarding plaintiffs' requests, but, notwithstanding any Order this Court may issue in the future, it appears most unlikely, if not impossible, that the documents can be processed and inventoried, that the agencies can claim any exemptions, that the parties can fully brief the issues, and that the Court can finally review the matters before the November 3, 1992 election.

■ Granting plaintiffs the emergency relief they seek will harm third parties. All four defendants have limited resources to process FOIA requests and the Court currently is inundated with cases seeking judicial review of FOIA activities. Accordingly, any expedited treatment of plaintiffs' requests will delay the processing of many other requests made ahead of plaintiffs by persons or entities not parties to this suit.

While the Court does not belittle the public importance of disseminating information concerning Mr. Perot before the election, it must acknowledge and consider the interests of others in timely obtaining the information they seek from government agencies.

■ Finally, the public interest does not favor the entry of a temporary restraining order. Ordering the agencies to disregard their first-in first-out approach and to speed up the processing of plaintiffs' FOIA requests would create an unworkable precedent and would severely jeopardize the public's interest in an orderly, fair, and efficient administration of the FOIA. Were the Court to grant plaintiffs' motion and order expedited processing of their Perot-related requests, how could the Court then deny expedited processing of the more than twenty other FOIA requests relating to the other Presidential and Vice Presidential candidates should the persons or entities who submitted those FOIA applications properly and promptly file suit? The expedition, so to speak, does not stop there. If the Court were to order departure from the first-in first-out approach in this case, where would it draw the line in the future? What about Congressional elections? Judicial nominations? Or cabinet appointments? Such precedent might also require agencies to expedite the processing of FOIA requests before important legislative votes or agency rulemaking. While the Court clearly recognizes the importance of an informed electorate, it also acknowledges the importance of a workable standard for agencies to follow when processing requests. Requiring agencies and courts to weigh and consider which types of elections and political concerns merit expeditious treatment and to determine the priority given to each concern would create unnecessary and undue burdens on those agencies.

---

7. In somewhat dramatic fashion, a letter transmitted via facsimile by counsel for Ross Perot regarding waiver of the privacy exemptions was delivered to plaintiffs' counsel in the Courtroom during the hearing. Unfortunately for plaintiffs, the letter informed counsel that Mr. Perot would not waive any privacy rights he may have in any of the documents at least until his counsel had the opportunity to review them.

## CONCLUSION

Accordingly, for the reasons stated herein, plaintiffs' motion for a temporary restraining order is denied.

Nonetheless, the shifting positions of the State Department as reflected in the defendants' own exhibits, the recent allegations published in newspaper articles, accurate or not, which were submitted to the Court, and the government's failure to answer the Court's questions of how, when, and by whom the alleged mistakes at issue were made causes the Court significant concern. As earlier stated, the denial of plaintiffs' motion for a temporary restraining order is based in measurable part on the government's uncontradicted *guarantees* that no documents discovered during expedited processing of any Clinton requests have been released by the State Department. Accordingly, the defendants are ordered to notify the Court and counsel for the plaintiffs, through affidavits and within 48 hours of discovery, of any past, present, or future release of any document by the State Department concerning any Presidential or Vice Presidential candidate resulting from expedited processing of any FOIA request submitted by a person or entity after June 22, 1992, the date plaintiffs filed the FOIA requests at issue in this case.

In accordance with 5 U.S.C. § 552(a)(6)(C), the Court will retain jurisdiction over this case, and there shall be a status conference on November 20, 1992 at 9:30 a.m. in Courtroom 18 to determine the future progress of this case, including briefing schedules, if appropriate.

IT IS SO ORDERED.