**Frank M. JIMENEZ, Plaintiff,**

v.

**FEDERAL BUREAU OF INVESTIGATION, et al., Defendants.**

**Civil Action No. 95–1519.**

United States District Court, District of Columbia.

July 23, 1996.

Frank Jiminez, Oxford Federal Correctional Institution, Oxford, WI, pro se.

Paul–Noel Chretien, U.S. Department of Justice, Washington, DC, for Federal Bureau of Investigation, U.S. Bureau of Prisons, U.S. Postal Service, Bureau of Alcohol, Tobacco & Firearms, Department of Treasury, Executive Office for the United States Attorneys, United States Marshals Service, Criminal Division, of The United States, Department of Justice, Drug Enforcement Administration, U.S. Dept. of Justice.

Karl J. Fingerhood, U.S. Department of Justice, Tax Division, Paul–Noel Chretien, U.S. Dept. of Justice, Washington, DC, for Tax Division, United States Department of Justice, Internal Revenue Service, Dept. of Treasury.

## MEMORANDUM OPINION

SPORKIN, District Judge.

This matter comes before the Court on cross-motions for summary judgment and on a motion for stay of proceedings by the Federal Bureau of Investigation. Plaintiff brings suit under the Freedom of Information Act, 5 U.S.C. § 552 [hereinafter FOIA]. Plaintiff, who is proceeding *pro se* in this matter, seeks all records pertaining to himself from the following defendants: Federal Bureau of Investigation (FBI), Bureau of Prisons (BOP), U.S. Postal Service (USPS), Bureau of Alcohol, Tobacco, & Firearms (ATF), Executive Office of the United States Attorney (EOUSA), U.S. Marshals Service (USMS), Criminal Division of the Depart-

ment of Justice (Criminal Division), and Drug Enforcement Administration (DEA).[1]

## BACKGROUND

On April 8, 1995, plaintiff submitted requests to all defendants for documents under the FOIA, 5 U.S.C. § 552. Specifically, plaintiff requested all records "in any way connected to, related to or even remotely in reference to [his] name." (Jimenez Aff., pp. 3–4). The USPS, ATF, and Criminal Division claim that they have conducted a legally sufficient search which has not yielded any documents responsive to plaintiff's request. The DEA, BOP, USMS, and EOUSA assert that they have released all documents responsive to plaintiff's request, with the exception of those documents which are subject to FOIA and Privacy Act exemptions. The FBI claims that "exceptional circumstances" exist which justify a four-year delay to comply with plaintiff's FOIA request, and consequently requests a stay of proceedings. Plaintiff filed a cross-motion for summary judgment against remaining defendants, as well as a one-page response to the defendants' motions for summary judgment.

## SUMMARY JUDGMENT STANDARDS

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." Mere allegations or denials of the adverse party's pleadings are insufficient to deny summary judgment; rather the adverse party must "set forth specific facts showing that there is a genuine issue for trial." Fed. R.Civ.Pro. 56(e).

■ Summary judgment is available to the defendant in a FOIA case when it proves that it has fully discharged its obligations under the FOIA, construing the underlying facts and inferences in a light most favorable

to the party opposing the motion for summary judgment. *Miller v. United States Dep't of State*, 779 F.2d 1378, 1382 (8th Cir. 1985) (citing *Weisberg v. United States Dep't of Justice*, 705 F.2d 1344, 1350 (D.C.Cir. 1984)). The adequacy of the agency's search is judged by a reasonableness standard, where the agency must prove that it made a good faith effort to conduct a search for the requested records using methods reasonably calculated to produce the information requested. *Oglesby v. Dep't of the Army*, 920 F.2d 57, 68 (D.C.Cir.1990). This reasonableness standard does not require the agency to examine in detail every document maintained by the agency. *See id.* The issue in a FOIA case is not whether the agencies' searches uncovered responsive documents, but rather whether the searches were reasonable. *Fitzgibbon v. United States Secret Serv.*, 747 F.Supp. 51, 54 (D.D.C.1990) (citing *Meeropol v. Meese*, 790 F.2d 942, 952–53 (D.C.Cir. 1986)).

## ANALYSIS AND DECISION

I. *Plaintiff's Claims Against the USPS, ATF, & Criminal Division*

■ The first question this Court must resolve is whether the searches performed by the USPS, ATF, and Criminal Division were adequate. The FOIA requires defendants to "conduct a search reasonably calculated to uncover all relevant documents." *Weisberg*, 705 F.2d at 1351. If the Government intends to rely on affidavits or declarations to support its claim that the search was adequate, such statements must be "relatively detailed, non-conclusory, and ... submitted in good faith." *Id.* A search is not rendered inadequate under this reasonableness standard merely because it fails to discover all responsive documents. Upon reviewing the affidavits submitted by the USPS, ATF, and Criminal Division, this Court is persuaded that these defendants complied with the reasonableness standard.

---

1. Counts IV and IX of plaintiff's complaint were against the Internal Revenue Service (IRS) and Department of Justice Tax Division respectively. These counts were dismissed by this Court's Order of January 4, 1996. Accordingly, the IRS and Tax Division are no longer parties to this action.

### A. United States Postal Service

■ Plaintiff, by letters dated April 8, 1995, and May 19, 1995, requested all records concerning himself regarding mail he received in the states of Wisconsin and Illinois.[2] (Bauman Decl. ¶ 7.) Henry J. Bauman, Counsel for the Postal Inspection Service at the Headquarters of the Inspection Service in Washington, D.C. was responsible for conducting the search. In his declaration, Bauman outlines the exhaustive but unfruitful efforts of the USPS in searching the mail cover records at the Inspection Service Headquarters, and the USPS's Chicago Division. *Id.* at ¶ 11. Because the Chicago Division is the field office that has jurisdiction over the geographical locations specified in the plaintiff's request, *Id.* at ¶ 13, it is reasonable to expect that any existing responsive records would be located in that office. The court concludes that the USPS's search was "reasonably calculated to uncover all relevant documents."

### B. Bureau of Alcohol, Tobacco, and Firearms

■ Plaintiff, by letter dated April 8, 1995, requested all ATF records concerning himself. (Pritchett Decl. ¶ 4.) The ATF responded to plaintiff's request by searching its "primary law enforcement computer records system, which indexes all ATF law enforcement records, including those records located in regional offices." *Id.* at ¶ 6. This search did not yield any responsive records because the ATF was not involved in the investigation or prosecution of the plaintiff. *Id.* at ¶ 8. The ATF's search was comprehensive and clearly was "reasonably calculated to uncover all relevant documents."

### C. Office of Enforcement Operations of the Criminal Division of the U.S. Dep't of Justice

■ Plaintiff, by letter dated April 8, 1995, requested all records concerning himself from the Criminal Division. The Criminal Division responded by asking the plaintiff to specify the system of records to be searched. (Williams Decl. at ¶ 6.) After searching those systems specified by plaintiff for refer-

ences to plaintiff's name, the Criminal Division failed to recover any records. *Id.* at ¶ 9. This Court finds that the search was consistent with the reasonableness standard.

Thus, based on the unopposed affidavits of the defendants, USPS, ATF, and Criminal Division, this Court finds that their searches were "reasonably calculated to uncover" all documents relevant to the plaintiff's request. Accordingly, the Court will grant the motions for summary judgment by defendants, USPS, ATF, and the Criminal Division.

### II. Plaintiff's Claims Against the DEA, BOP, USMS, and EOUSA

Defendants DEA, BOP, USMS, and EOUSA responded to plaintiff's FOIA request by producing all documents except those which defendants allege fall under the FOIA's statutory exemptions outlined in 5 U.S.C. § 552(b). Plaintiff claims that defendants arbitrarily and capriciously withheld information, and have not met their burden of proof that the withheld documents fall under the specified exemptions. *See Vaughn v. United States*, 936 F.2d 862, 866 (6th Cir.1991) ("The burden is on the agency to demonstrate, and not on the requester to disprove, that the material sought may be withheld due to an exemption."); *see also Anderson v. Dep't of Health and Human Services*, 907 F.2d 936 (10th Cir.1990) (holding that the federal agency resisting disclosure bears burden of justifying the nondisclosure).

■ In meeting their burden, the defendants need only adopt a "generic approach." *See Bevis v. Dep't of State*, 801 F.2d 1386, 1388 (D.C.Cir.1986). Under a "generic approach," the Government must define functional document categories, review individual documents and separate them into various categories, and explain how each category meets the statutory exemption justifying nondisclosure. *Id.* The Court will consider the legitimacy of the disputed exemptions on an individual basis.

### A. Exemption 2: Information on Internal Practices

■ Defendants DEA, BOP, and USMS rely on Exemption 2, which shields from

2. These records are referred to as mail cover records.

disclosure agency records concerning "matters that are ... related solely to the internal personnel rules and practices of an agency." 5 U.S.C. § 552(b)(2). For Exemption 2 to apply, the withheld material must first fall within the statutory language. Specifically, the matter must relate predominantly to internal agency rules and practices. *Schwaner v. Dep't of Air Force,* 898 F.2d 793 (D.C.Cir. 1990).

The DEA withheld documents containing certain "violator identifiers." [3] The BOP relied on Exemption 2 in withholding certain computer codes used to access confidential information from the National Crime Information Center computerized data system. The BOP also claims Exemption 2 applies to portions of records pertaining to plaintiff's classification as a "gang member." The USMS applied Exemption 2 to withhold an internal access code and a routing symbol from computer and teletype correspondence.

■ Some of the information withheld by the DEA, BOP, and USMS consists of codes which indicate each agency's practices as to their internal routing and distribution of papers. The material withheld is of an administrative nature and is totally unrelated to the subject of plaintiff's request. The law is clear that agencies may delete sensitive notations on documents where they indicate an agency's practices as to internal routing and distribution. *See, e.g., Lesar v. United States Dep't of Justice,* 636 F.2d 472, 485 (D.C.Cir.1980); *Kuffel v. United States Bureau of Prisons,* 882 F.Supp. 1116, 1123 (D.C.Cir.1995). The negligible value of such routine internal administrative material to the public in understanding government operations when weighed against the potential harm resulting from disclosure justifies the withholding of such materials. *See Founding Church of Scientology v. Smith,* 721 F.2d 828, 829 (D.C.Cir.1983).

■ Regarding the other information the agencies seek to withhold pursuant to Exemption 2 of the FOIA—DEA's violator identifiers and BOP's gang validation criteria—

the Government must show that the information is used for "predominantly internal purposes" and that its disclosure would significantly risk circumvention of the law. *Kuffel,* 882 F.Supp. at 1123 (citations omitted); *Schwaner,* 898 F.2d at 794; *Crooker v. Bureau of Alcohol, Tobacco & Firearms,* 670 F.2d 1051 (D.C.Cir.1981)).

Declarations submitted by both agencies indicate that the redacted information is used internally in order to facilitate use of the agencies' law enforcement records. Disclosure of the DEA violator identifiers could enable suspects to decode classified DEA information and change their pattern of drug trafficking in an effort to thwart DEA investigations. If the BOP's criteria for gang member classification were disclosed, individuals could manipulate the applicable facts so as to avoid detection as gang members. In short, the information withheld by the DEA and BOP meets the requirements of Exemption 2.

### B. Exemption 3: Information Protected by Statute

■ Defendant EOUSA relies on Exemption 3 of the FOIA with respect to certain documents. This provision authorizes an agency to withhold materials which are protected from disclosure by other statutes. Specifically, the FOIA states that materials need not be disclosed if they are:

> "exempted from disclosure by statute ... provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld."

5 U.S.C. § 552(b)(3). The two issues raised in an Exemption 3 claim are (1) whether a qualifying nondisclosure statute exists, and (2) whether the withheld information is within the scope of that statute. See *CIA v. Sims,* 471 U.S. 159, 167, 105 S.Ct. 1881, 1886–87, 85 L.Ed.2d 173 (1985); *Baldrige v.*

---

**3.** "Violator identifiers" are internal agency codes used by the DEA to identify particular narcotics investigations, based on the priority of the inves-

tigation, the types of criminal activities involved, and the like.

*Shapiro,* 455 U.S. 345, 353, 102 S.Ct. 1103, 1108–09, 71 L.Ed.2d 199 (1982).

In EOUSA's Exemption 3 claim, the applicable nondisclosure provision is Federal Rule of Criminal Procedure 6(e), which prohibits the disclosure of "matters occurring before a grand jury" covered by Exemption 3. By its very essence, grand jury information is afforded wide protection. The grand jury shield protects "the identities of witnesses or jurors, the substance of testimony, the strategy or direction of the investigation, the deliberations or questions of jurors, and the like." *Fund for Constitutional Gov't v. National Archives & Records Service,* 656 F.2d 856, 869 (D.C.Cir.1981) (citing *Sec. and Exch. Comm'n v. Dresser Indus.,* 628 F.2d 1368, 1382 (D.C.Cir.1980)).

The information EOUSA withheld consists of the following: (1) grand jury testimony transcripts and subpoenas; (2) notes written by an Assistant United States Attorney in preparation for the case against the plaintiff to the grand jury, including reference to evidence, mental impressions, strategy, and tactics to be employed in grand jury proceedings; (3) records of third parties provided to the Government in the course of grand jury proceedings; and (4) notes concerning witnesses who testified before the grand jury. (Boseker Decl. ¶ 16.) This material falls within the scope of Federal Rule of Criminal Procedure 6(e) and is clearly nondisclosable.

### C. Exemption 5: Information Protected by Work Product and Deliberative Process Privilege

 Exemption 5 of the FOIA protects from mandatory disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party . . . in litigation with the agency." 5 U.S.C. § 552(b)(5). This exemption applies to all records which would normally be "protected" in civil discovery. Deliberative process and attorney work-product materials fall within the exemption. *See Nat'l Labor Relations Bd. v. Sears, Roebuck & Co.,* 421 U.S. 132, 149, 95 S.Ct. 1504, 1515–16, 44 L.Ed.2d 29 (1975) (civil discovery); *see id.* at 151, 95 S.Ct. at 1516–17; *Wolfe v. Health & Human Services,* 839 F.2d 768, 773 (D.C.Cir.1988) (en banc) (deliberative process); *see Fed. Trade Comm'n v. Grolier,* 462 U.S. 19, 28, 103 S.Ct. 2209, 2214–15, 76 L.Ed.2d 387 (1983) (attorney work-product). EOUSA, the sole defendant asserting Exemption 5, claims that the documents withheld are attorney work-product and deliberative process materials. (Boseker Decl. ¶ 17 & *Vaughn* Index.)

These documents were prepared in the course of litigation by Assistant United States Attorneys and their staffs, concerning the investigation and prosecution of plaintiff and other defendants in the criminal proceedings entitled *United States v. Jimenez,* No. 93 CR 20046 (N.D.Ill.). (Boseker Decl. ¶¶ 9, 14, 17.) The documents reflect the attorneys' trial preparation, trial strategy, interpretations, handwritten notes, and personal evaluations and opinions concerning plaintiff's and other defendants' criminal cases. (Boseker Decl. ¶ 17 & *Vaughn* Index.) These materials constitute classic, privileged attorney work-product. *See Martin v. Office of Special Counsel,* 819 F.2d 1181, 1187 (D.C.Cir.1987); *Butler v. United States Dep't of Justice,* No. 86–2255, slip op. at 21–22, 1994 WL 55621 (D.D.C. Feb. 3, 1994). Accordingly, this Court finds that the documents were properly withheld under Exemption 5.

 EOUSA has also withheld various documents under the deliberative process prong of Exemption 5. This protects the Government's internal consultative process by preserving the confidentiality of opinions, recommendations, and deliberations underlying government decisions and policies. *Jordan v. Dep't of Justice,* 591 F.2d 753, 772 (D.C.Cir.1978). To invoke the deliberative process exemption, the agency must show that the documents (1) precede final agency action on the matter addressed, and (2) make recommendations or express opinions on matters to be decided. *Senate of P.R. v. U.S. Dep't of Justice,* 823 F.2d 574, 585 (D.C.Cir.1987).

EOUSA has satisfied both of these requirements. The twenty-six withheld documents illustrate the steps in decisionmaking at the U.S. Attorney's office and other federal and state agencies in considering possible criminal actions against Mr. Jimenez and

third party individuals." (Boseker Decl. ¶ 17 and *Vaughn* Index.) Disclosure of this information would reveal predecisional and deliberative communications among government personnel, and could undermine the candid and comprehensive considerations essential for efficient agency decisionmaking. Thus, the information has been properly withheld under Exemption 5.

### D. Exemption 7: Information Compiled for Law Enforcement Purposes

Exemption 7 of the FOIA protects records or information compiled for law enforcement purposes. 5 U.S.C. § 552(b)(7). The DEA, BOP, USMS, and EOUSA assert various subsections of Exemption 7.[4]

#### 1. Exemption 7(C): Invasion of Personal Privacy

 Defendants DEA, BOP, USMS, and EOUSA all assert Exemption (7)(C) with regard to certain documents. Exemption 7(C) exempts documents concerning "... records or information compiled for law enforcement purposes, but only to the extent that the production of such ... records or information ... could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). In determining whether Exemption 7(C) applies, the court must balance the privacy interests of the individual against the public interest in the disclosure of the withheld information. *Keys v. Dep't of Justice,* 830 F.2d 337, 340 (D.C.Cir.1987).

 The DEA has withheld the names of third parties who were identified by the FBI as being engaged in narcotics activities. It is common sense that the release of the names of these individuals could result in their stigmatization. Additionally, two pages of the withheld documents contain the names of DEA special agents, the release of which could cause them physical harm. After balancing the individuals' privacy interests

against the minimal public interest in disclosure of these individuals' identities, this Court finds that DEA properly asserted Exemption 7(C).

 Also pursuant to Exemption 7(C), the BOP has withheld several pages that identify "separatees" and a one page memorandum that concerns the classification of two other federal prisoners.[5] The BOP also withheld a one page letter identifying a "separatee", certain prospective visitors, and the name of a United States Marshal. Disclosing the names of such individuals would not serve any public interest. These individuals' privacy interests outweigh any discernible public interest in disclosure. Thus, the BOP properly asserted Exemption 7(C).

 Defendant USMS withheld the names and initials of law enforcement officers and other government personnel, and the names and register numbers of certain prisoners. The documents containing this material were compiled for law enforcement purposes in connection with the receipt, processing, safekeeping, and transportation of plaintiff while he was in the USMS's custody. The release of information regarding the identities of law enforcement officers and other prisoners may expose these individuals to possible harassment and retaliation. As there is no legitimate public interest that would be served by disclosing this material, this Court finds that the USMS properly invoked Exemption 7(C).

 Defendant EOUSA withheld material in seventy-eight documents to protect the identities of certain third parties, namely those FBI special agents, government employees, and local law enforcement officers, who participated in the investigation and prosecution of plaintiff's case. (Boseker Decl. ¶ 18 & *Vaughn* Index.) Release of this information could result in harassment, harm, or derogatory publicity to persons identified, and could undermine law enforcement effectiveness in subsequent cases. As

---

**4.** Defendants DEA, BOP, USMS, and EOUSA have also claimed Exemption (j)(2) of the Privacy Act. To the extent that the withheld documents meet the threshold requirement of Exemption 7, the documents will also satisfy the Privacy Act Exemption.

**5.** Separatees are prisoners who are required to be kept separated from the plaintiff, usually for personal safety reasons.

no ascertainable public interest exists to outweigh the privacy infringement on these identified individuals, this Court holds that EOUSA has properly applied Exemption 7(C).

### 2. *Exemption 7(D): Information Furnished by a Confidential Source*

██· Defendants DEA and EOUSA both assert Exemption 7(D) in withholding several documents. Exemption 7(D) exempts documents which are "... records or information compiled for law enforcement purposes, but only to the extent that such ... records or information ... could reasonably be expected to disclose the identity of a confidential source...." 5 U.S.C. § 552(b)(7)(D). To qualify, the information at issue must be supplied by a confidential source in the course of a criminal investigation. *Lesar v. United States Dep't of Justice,* 636 F.2d 472, 492 (D.C.Cir.1980). Once this requirement is met, "all such information obtained from the confidential source receives protection." *Id.*

██ The DEA and EOUSA withheld the names of and information provided by confidential informants. The DEA gave its informant—who provided information about possible suppliers of illegal drugs—an express promise of confidentiality. While the EOUSA did not give its informant an express assurance of confidentiality, the informant could have reasonably inferred such a promise, given the serious nature of the criminal charges being investigated, and the fact that the plaintiff had previously harassed and threatened government informants. *See United States Dep't of Justice v. Landano,* 508 U.S. 165, 178–80, 113 S.Ct. 2014, 2023, 124 L.Ed.2d 84 (1993) (upholding nondisclosure of informant's identity where informant reasonably could infer promise of confidentiality). Based on the above, this Court finds that release of the information could possibly lead to the identification of confidential sources. Accordingly, the DEA and EOUSA properly applied Exemption 7(D).

### 3. *Exemption 7(E): Information Disclosing Law Enforcement Techniques and Procedures*

██ Defendant BOP asserts Exemption 7(E) which excludes documents which are "... records or information compiled for law enforcement purposes, but only to the extent that such ... records ... would disclose techniques and procedures for law enforcement investigations or prosecutions ... if such disclosure could reasonably be expected to risk circumvention of the law." The information withheld consists of the BOP gang validation criteria [6] as applied to plaintiff Jimenez. Releasing this information could enable inmates to circumvent detection as gang members, and hamper the effectiveness of law enforcement officers. Thus, this Court finds that the BOP properly invoked Exemption 7(E).

### 4. *Exemption 7(F): Information Which Could Endanger Safety of any Individual*

██ Both the DEA and EOUSA rely on Exemption 7(F) which exempts documents which are "... records or information compiled for law enforcement purposes, but only to the extent that the production of such ... records or information ... could reasonably be expected to endanger the life or physical safety of any individual." This exemption affords broad protection to the identities of individuals mentioned in law enforcement files. *See, e.g., Epps v. Dep't of Justice,* 801 F.Supp. 787, 795 (D.D.C.1992).

██ In this case, EOUSA has withheld the names and identifying information furnished by individuals who provided confidential information concerning the investigation or prosecution of plaintiff. (Boseker Decl. ¶¶ 18, 20 & *Vaughn* Index.) In addition to Exemptions 7(C) and 7(D), discussed above, Exemption 7(F) provides further authority for EOUSA's withholding of the names and identifying information of these confidential sources.

██ Also pursuant to Exemption 7(F), the DEA redacted the names of DEA special

---

**6.** Gang validation criteria refers to the factors used by the BOP in determining whether a par-

ticular individual can be classified as a gang member.

agents, supervisors, and one local law enforcement officer. The release of these individuals' identities could result in physical attacks, threats, or harassment. It is in the public interest not to disclose the identity of special agents so that they may continue to effectively pursue their undercover and investigative assignments. Because disclosure of the identities of investigative personnel would have a detrimental effect on DEA operations and could endanger the lives of its agents, the DEA correctly applied Exemption 7(F).

### III. Plaintiff's Claim Against the FBI

The final issue for the Court to resolve is whether "exceptional circumstances" justify the FBI's motion to stay the proceedings until March 2000 in order to allow it sufficient time to process plaintiff's FOIA request. In support of its request for a stay, the FBI alleges that its resources are extremely limited and that it is seriously strained by the number of FOIA requests it receives each year. (Stewart Decl. ¶¶ 33–36.) It estimates that there are 700 pages of records responsive to plaintiff's request. Id. at ¶ 23. Due to the magnitude of the processing task, and the existing backlog of previously filed FOIA requests, the FBI has instituted a two track system.[7] Plaintiff's request was classified as track two due to the large number of responsive documents. Currently, there are 3,080 requests ahead of plaintiff's request. (Steward Decl. ¶ 24.)

Under the FOIA, agencies must respond to a request for information within ten working days. 5 U.S.C. § 552(a)(6)(A)(i). However, "[i]f the Government can show exceptional circumstances exist and that the agency is exercising due diligence in responding to the request, the court may retain jurisdiction and allow the agency additional time to complete its review of the records." 5 U.S.C. § 552(a)(6)(C); see Open Am. v. Watergate Special Prosecution Force, 547 F.2d 605, 616 (D.C.Cir.1976) (permitting a stay when agency has limited resources, is faced with requests vastly in ex-

cess of that anticipated by Congress, and is exercising due diligence.); see, e.g., Fox v. United States Dep't of Justice, No. 94–4622, slip op. at 6–9, 12 (C.D.Cal. Dec. 14, 1994) (granting six-year stay where FBI had a backlog of 11,828 requests and Congress refused to expand the small staff of FOIA processors). Courts have interpreted this provision to excuse any delays in responding to a request "as long as the agency is making a good faith effort and exercising due diligence in processing the requests on a first-in first-out basis." Kuffel, 882 F.Supp. at 1127.

Because of the large backlog of FOIA requests, the FBI has instituted a two track system and a first-in, first-out processing of requests. In view of this two track system and the large volume of documents expected to be responsive to plaintiff's request, this Court finds that the FBI has met the due diligence requirement for a stay. See Lisee v. C.I.A., 741 F.Supp. 988, 989 (D.D.C.1990) (holding FBI's and NSC's processing of requests on a first-in, first-out basis met the "exceptional circumstance" and "due diligence" requirements of the FOIA); But see Hamlin v. Kelley, 433 F.Supp. 180 (N.D.Ill. 1977) (finding that a showing of "an inadequate staff, insufficient funding, or great number of requests" did not amount to "exceptional circumstances" to justify a stay under the FOIA).

However, a stay is not appropriate where the request is necessary and urgent. Open Am., 547 F.2d at 616 (emphasis added); Nation Magazine v. Dep't of State, 805 F.Supp. 68, 73 (D.D.C.1992). Plaintiff claims that the withheld records contain information which shows a violation of his due process rights. Plaintiff argues that, due to the constitutional nature of his claim, his request falls under the "urgent need" exception, requiring that the FBI process his request first.

The plaintiff bears the burden of "showing a 'genuine need and reason for urgency in gaining access to Government records ahead of prior applicants for information.'" Lisee, 741 F.Supp. at 989, (quoting Open Am., 547

---

7. Under the current system, requests requiring minimal review and consisting of less than one hundred pages are placed in track one. More

voluminous and complex requests are placed in track two.

F.2d at 615–16 (rejecting "urgent need" argument where plaintiff needed the information to meet publishing and production deadlines)). In *Open Am.*, the Court of Appeals warned against permitting parties to merely claim that they have an "urgent need." *Open Am.*, 547 F.2d at 615. Plaintiff in this matter has merely asserted his need for the requested documents, but has not elaborated on his claim that he has a due process interest in the documents.

Without further support, this Court cannot find that plaintiff has an "urgent need." Without a showing of "urgent need," plaintiff must wait his turn in having the requested documents processed and disclosed. Accordingly, this Court will dismiss without prejudice the action against the FBI. However, pursuant to 5 U.S.C. § 552(a)(6)(c), this Court will retain jurisdiction while allowing the FBI additional time to complete its review. If the FBI has not responded to plaintiff's request by March 2000, or if some of defendant's backlog subsides, plaintiff may reinstate this action by filing notice with this Court by May 1, 2000.

## CONCLUSION

As is evident in the discussion above, the USPS, ATF, and the Criminal Division conducted reasonable searches to uncover the requested documents. The DEA, BOP, USMS, and EOUSA have properly invoked exemptions to the FOIA with regard to all the contested documents. The FBI has demonstrated "exceptional circumstances" justifying a stay. An appropriate Order accompanies this Memorandum Opinion.