Wagner D. JACKSON, Jr., Plaintiff

v.

**UNITED STATES ATTORNEYS OFFICE, DISTRICT OF NEW JERSEY, et al., Defendant.**

**No. CIV. 00–1315(RJL).**

United States District Court, District of Columbia.

Aug. 30, 2003.

Dorann E. Banks, Lead Atty., U.S. Attorney's Office, Washington, DC, for U.S. Dept. of Justice.

## MEMORANDUM OPINION AND ORDER

LEON, District Judge.

Now before the Court are plaintiff's and defendants' cross motions for summary judgment. Plaintiff, Wagner D. Jackson ("Jackson") brings the instant action under the Freedom of Information Act (FOIA) seeking records from the defendants [1], the United States Attorneys Office for the District of New Jersey ("USAO," "USAO/DNJ"), *et al.* (collectively, "the government"), that relate to the USAO's decision to not prosecute or investigate a complaint filed by the plaintiff in April 12, 1999. The defendant maintains that an adequate search was performed in response to the FOIA request and that all responsive documents were turned over to plaintiff. Those that were not, according to the defendants, are exempt from the FOIA's disclosure requirements.

After reviewing the parties' motions and the relevant law, the Court denies in part both defendants' and plaintiff's motion for summary judgment in regard to the adequacy of the FOIA search. As the defendants' affidavits fail to set forth in the degree of detail that this Circuit requires, the Court is unable to evaluate the adequacy of the FOIA search. However, the Court finds that the government properly invoked FOIA Exemption 5 when withholding certain documents from the plaintiff and therefore grants in part the defendants' motion for summary judgment.

---

1. The plaintiff's suit names the following defendants: the United States Attorney's Office for the District of New Jersey ("USAO/DNJ"); Faith Hochberg of the USAO/DNJ; the United States Department of Justice, Executive Office of the United States Attorney ("EOUSA"); the United States Attorney General; and the United States District Attorney for the District of Columbia.

## BACKGROUND

Plaintiff's FOIA request to the United States Attorney's Office for the District of New Jersey ("USAO/DNJ") stems from a civil case filed by plaintiff in the United States District Court for the District of New Jersey. In that case, plaintiff claimed that a dating service called "The Right Stuff" had discriminated against him on the basis of race when it discharged him from the service. The district court dismissed plaintiff's case and, subsequently, the Third Circuit affirmed on January 29, 1999. *See Jackson v. The Right Stuff, et al.,* 176 F.3d 472 (3rd Cir.1999).

Following the dismissal of his racial discrimination claim, plaintiff wrote the office of the United States Attorney for the District of New Jersey on April 12, 1999, and asked it to investigate acts of perjury allegedly committed during the course of plaintiff's civil suit by witnesses for the "The Right Stuff." According to the plaintiff, the Chief of the USAO/DNJ Criminal Division, Patty Schwarz, referred the matter to the Federal Bureau of Investigation ("FBI") for investigation.

Approximately one month later, on May 10, 1999, plaintiff contends that FBI Agent Brad Orsini contacted him and told him that, pursuant to a "written directive" from the USAO/DNJ, the investigation of plaintiff's perjury complaint had ended as the USAO had decided against prosecuting the charge.[2] That same day, plaintiff

---

2. In their motion for summary judgment, defendants never mention plaintiff's April 12 letter, nor do they contest or otherwise acknowledge plaintiff's alleged conversation with FBI Agent Orsini, during which plaintiff claims Orsini told him that the investigation had been dropped at the directive of the USAO/DNJ. Defendants do, however, acknowledge plaintiff's May 10, 1999, letter to the USAO/DNJ in which he again made a perjury complaint against witnesses for "The

wrote a second letter to the USAO/DNJ, in which he again made a perjury complaint against witnesses for "The Right Stuff." In addition to asking the USAO to investigate the perjury allegation, plaintiff also asked the office to release, pursuant to FOIA, 5 U.S.C. § 552, "copies of all non-privileged documents relating to [the] decision" not to prosecute the witnesses for "The Right Stuff." According to both plaintiff and defendants, the USAO/DNJ forwarded Jackson's FOIA request to the Executive Office for United States Attorneys ("EOUSA"). Three months later, on August 13, 1999, the EOUSA released 141 pages of responsive materials to the plaintiff with a letter informing him that his FOIA request had been processed, and that two pages of material had been withheld pursuant to FOIA exemption 5, as the materials were part of the USAO's deliberative process.

Plaintiff contends that defendants have violated FOIA's requirements in two ways. First, Jackson argues that the USAO/DNJ and the EOUSA failed to conduct a reasonable search for the documents he requested in violation of FOIA. In particular, Jackson takes issue with the defendants' failure to discover the "written directive," or memorandum, from AUSA Schwarz to Agent Orsini stating that the USAO had decided not to prosecute Jackson's perjury complaint. Second, Jackson claims that the materials defendants have withheld pursuant to FOIA Exemption 5 are not part of the defendants' deliberative processes and therefore must be released.

### ANALYSIS

Plaintiff and defendants have filed cross motions for summary judgment, as well as opposition and reply motions.

Summary judgment is appropriate under Federal Rule 56(c) "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Diamond v. Atwood,* 43 F.3d 1538, 1540 (D.C.Cir.1995). All evidence presented must be construed in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

To determine which facts are material, the Court must examine the substantive law underlying the claim. *See Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. A "genuine issue" is one whose resolution could establish an element of a claim or defense, thereby affecting the outcome of the action. *See Celotex,* 477 U.S. at 322, 106 S.Ct. 2548. Additionally, to be genuine, an issue must be supported by sufficient admissible evidence such that a reasonable trier-of-fact could find for the nonmoving party. *See Laningham v. United States Navy,* 813 F.2d 1236, 1242–43 (D.C.Cir. 1987). An adverse party's or non-moving party's mere allegations or denials are insufficient to defeat an otherwise proper motion for summary judgment. Instead, the nonmoving party must present, by affidavits or otherwise, specific facts that demonstrate there is a genuine issue for trial. *See id.* at 1248–49.

 In regard to the adequacy of the FOIA search conducted by the defendants in this case, the government is entitled to summary judgment on this point only if it

Right Stuff," and stated that his April 12, 1999, request that the USAO investigate the alleged perjury had been denied.

shows that the search was "reasonably calculated to uncover all relevant documents." *Weisberg v. United States Department of Justice,* 705 F.2d 1344, 1351 (D.C.Cir.1983). *See also Oglesby v. United States Dept. of the Army,* 920 F.2d 57, 68 (D.C.Cir.1990); *Truitt v. Dept. of State,* 897 F.2d 540, 542 (D.C.Cir.1990). The agency need not conduct an exhaustive search in order to comply with the FOIA. Rather, the adequacy of the government's search depends on the facts and circumstances of each case. *See Truitt v. Department of State,* 897 F.2d 540, 542 (D.C.Cir.1990).

### A. Adequacy of the FOIA Search

As the adequacy of the search depends turns on the facts of each case, the Court must necessarily review the scope of Jackson's FOIA request. In his letter to the USAO/DNJ dated May 10, 1999, Jackson requested "copies of all non-privileged documents related to this decision [of the USAO to not prosecute plaintiff's perjury complaint] pursuant to the Freedom of Information Act, 5 U.S.C. § 552." Pl.'s Mot. for Summ. J. Ex. (letter to the USAO/DNJ). According to the declaration of John F. Boseker, an attorney-advisor with the FOIA unit of the EOUSA, each document reviewed in response to Jackson's FOIA request was located in the Criminal Case File System of the offices of the USAO/DNJ. *See* Boseker Decl. ¶ 13. Additionally, Boseker explained that the documents were "maintained ... as part of an [*sic*] criminal investigatory file opened regarding Mr. Jackson's allegation of perjury ...." *Id.*

■ While Boseker "personally reviewed all the materials identified by the USAO/DNJ as the complete Jackson file," and spoke to AUSA Susan Cassell of the USAO/DNJ, who assured him "that the complete file possessed by the District of USAO/DNJ had been forwarded for review," Boseker's declaration is bereft of the type of detail this Court needs in order to assess whether the search was, in fact, reasonable and adequate. As this Circuit stated in *The Nation Magazine, Washington Bureau v. United States Customs Service,* 71 F.3d 885, 890 (D.C.Cir. 1995) (*"Nation Magazine"*), in order for the government to demonstrate at the summary judgment stage that the search was reasonably calculated to produce relevant documents, "the agency must set forth sufficient information in its affidavits for a court to determine that if the search was adequate." The affidavits must be "reasonably detailed," and include the search terms used by the agency when performing the search, the type of search performed, and an averment that "all files likely to contain responsive materials (if such records exist) were searched." *Weisberg v. United States Dept. of Justice,* 705 F.2d 1344, 1351 (D.C.Cir.1983).

■ A cursory review of Boseker's declaration quickly reveals that it does not meet the standard set forth in *Nation Magazine* and *Weisberg* for establishing the reasonableness and adequacy of a FOIA search. In essence, Boseker merely states that he reviewed the file put before him by the USAO for the District of New Jersey as the "complete Jackson file." Nowhere in his declaration does he explain what kind of search was conducted or procedure followed by the USAO to compile the documents which ultimately constituted the Jackson file. Moreover, although Boseker maintains that all records reviewed in conjunction with plaintiff's FOIA request were located in the Criminal Case File System, he does not aver in his declaration—as required by this Circuit in *Nation Magazine*—"that all files likely to contain responsive materials ... were

searched." *Nation Magazine*, 71 F.3d at 890.

A similar situation to this was presented to this Circuit in *Steinberg v. United States Dept. of Justice*, 23 F.3d 548 (D.C.Cir.1994). In *Steinberg*, as in this case, the EOUSA described in a general manner how it processed FOIA requests but "fail[ed] to describe in any detail what records were searched, by whom, and through what process." *Id.* at 552–53. Additionally, when pressed by the court in oral argument regarding the particulars of the search, the EOUSA in *Steinberg* could only state that it had " 'contacted the [Boston] United States Attorney's Office and was informed that no records responsive to the request had been located.' " *Id.* (quoting a declaration submitted by the EOUSA). As this Circuit found in *Steinberg*, this Court also finds that the affidavit's general statements prevent the Court from assessing the adequacy of the FOIA search and, therefore, granting the government's motion for summary judgment.

Because the defendants have not submitted sufficiently detailed affidavits, the Court cannot evaluate the reasonableness and adequacy of the FOIA search and, as a result, must deny both plaintiff's and defendant's motion for summary judgment on this point. Accordingly, the Court orders the defendants to provide additional and more detailed affidavits explaining how the Jackson file was compiled. Those affidavits must meet the standard already set forth by this Circuit in *Weisberg, Nation Magazine,* and *Steinberg.* When these affidavits are presented to the Court, the parties may renew their cross motions for summary judgment as to this claim.

**B. Applicability of FOIA Exemption 5**

In addition to challenging the adequacy of the FOIA search, plaintiff also argues that defendants have improperly withheld two pages of material by maintaining that they are predecisional and deliberative records covered by Exemption 5 of the FOIA. As the Court finds that the government properly withheld these documents, the Court hereby denies plaintiff's motion for summary judgment and grants defendant's motion for summary judgment on this point.

■ Exemption 5 of the FOIA, set forth in 5 U.S.C. § 552(b)(5) provides that "inter-agency or intra-agency memorandums or letters which would not be available by law to a party ... in litigation with the agency" are not subject to disclosure. Typically, this exemption applies to documents "which would normally be 'protected' in civil discovery." *Jimenez v. Federal Bureau of Investigation, et al.,* 938 F.Supp. 21, 28 (D.D.C.1996). Among those documents protected in civil discovery, and therefore covered by FOIA Exemption 5, are deliberative process and attorney work product materials. *See National Labor Relations Board v. Sears, Roebuck & Co.,* 421 U.S. 132, 149, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975); *EPA v. Mink,* 410 U.S. 73, 86, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973); *Coastal States Gas Corp. v. Dept. of Energy,* 617 F.2d 854, 866 (D.C.Cir.1980) (stating that "[a]nother traditional area of privilege which has been recognized under Exemption 5 is attorney work-product."). While the work product privilege provides a " 'zone of privacy' within which to think, plan, weigh facts and evidence, candidly evaluate a client's case, and prepare legal theories," the doctrine protects only those documents "prepared in contemplation of litigation." *Coastal States,* 617 F.2d at 864.

■ After examining Boseker's affidavit, the Court concludes that the two pages of materials are exempt from FOIA under the attorney work product privilege. The

affidavit clearly establishes that the notes were prepared during the investigation of Jackson's complaint and in anticipation of litigation, as they describe:

> ... evidence obtained in the course of the inquiry, evaluation of the case, and reasons to decline prosecution.

> ... reflect such matters as trial preparation, trial strategy, interpretations, and personal evaluations and opinions pertinent to the investigation by the USAO of the alleged criminal perjury case. The records were prepared by an attorney or at an attorney's request or direction, and made in anticipation of litigation....

> In addition, these same pages, contain deliberative process of the U.S. Attorney's office in considering the possible criminal actions. To disclose this information would reveal pre-decisional communications among government personnel (i.e., discussions of various litigation issues, alternatives, and strategies), which would jeopardize the candid and comprehensive considerations essential for efficient and effective agency decision-making.

Boseker Aff. ¶¶ 16–18. Because these notes, as described by Boseker, "set forth the attorney's theory of the case and his litigation strategy," the Court finds that the material falls within the boundary of the work product privilege and, therefore, Exemption 5 of the FOIA. *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 154, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975) (explaining that "Congress had the attorney's work-product privilege specifically in mind when it adopted Exemption 5 ...."). The fact that the litigation for which the document was prepared—presumably, a prosecution of Jackson's perjury complaint—did not occur or has otherwise been terminated does not prevent the government from properly invoking Exemption 5. *See Feder-al Trade Comm'n v. Grolier Inc.,* 462 U.S. 19, 28, 103 S.Ct. 2209, 76 L.Ed.2d 387 (1983) (holding that "under Exemption 5, attorney work-product is exempt from mandatory disclosure without regard to the status of the litigation for which it was prepared.").

■ The Court also concludes that the deliberative process privilege of Exemption 5 applies to the investigating AUSA's notes. The defendants, through the Boseker affidavit, have demonstrated both prongs of the test set forth by this Circuit in *Coastal States Gas Corp. v. Dept. of Energy,* 617 F.2d 854, 866 (D.C.Cir.1980) for invoking this privilege: (1) that the document is "predecisional," that is, "it was generated before the adoption of an agency policy," and (2) that the document is "deliberative," meaning that it "reflects the give-and-take of the consultative process."

■ Considering the second prong first, the Court has no difficulty determining that the investigating AUSA's notes represent the "give and take" of the office's processes. As the two-pages of handwritten noted reflect the personal opinions of the investigating AUSA, such as his or her evaluation of the case and reasons the USAO should decline prosecution, they are part and parcel of the USAO/DNJ's decisionmaking processes regarding criminal prosecutions. *See Jimenez,* 938 F.Supp. 21, 28–29 (D.D.C.1996) (holding that documents of the U.S. Attorney's Office pertaining to "possible criminal actions" are properly withheld under Exemption 5 as "[d]isclosure of this information would reveal predecisional and deliberative communications ... and could undermine the candid and comprehensive considerations essential for efficient agency decisionmaking."). Releasing these documents, the Court believes, "would expose an agency's decision making process

in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions." *Formaldehyde Inst. v. Department of Health and Human Services,* 889 F.2d 1118, 1122 (D.C.Cir.1989). Preserving the quality of agency decisionmaking processes by protecting candid discussions of policy, legal matters, and agency personnel's recommendations and suggestions is the reason why FOIA Exemption 5 was enacted by Congress. *See Sears, Roebuck & Co.,* 421 U.S. at 150, 95 S.Ct. 1504.

In addition, the Court also finds that the defendants have demonstrated the predecisional nature of the investigating AUSA's notes. From Boseker's description, the document clearly was drafted during the course of the investigation as part of the deliberative processes of the USAO/DNJ in deciding whether to prosecute a criminal complaint, and does not represent a final agency decision.

As the defendants have properly invoked exemption 5 of the FOIA by demonstrating that the notes of the investigating AUSA are covered by the work product and deliberative process privileges the Court hereby grants defendant's motion for summary judgment and denies plaintiff's motion for summary judgment on this claim.

### CONCLUSION

For the reasons set forth above, the Court hereby

ORDERS that the defendants' motion for summary judgment is GRANTED in part and, accordingly, summary judgment is granted for the defendant as to plaintiff's claim that defendants improperly invoked Exemption 5 of FOIA; plaintiff's motion for summary judgment as the applicability of Exemption 5 is therefore DENIED;

ORDERS that plaintiff's and defendant's motion for summary judgment is DENIED in part as to the adequacy of the search for responsive FOIA records. Because the Court is unable to evaluate the adequacy of the search due to the insufficiency of the defendants' affidavit, the Court further

ORDERS defendants to submit within 90 days additional and/or more detailed affidavits describing the processes and procedures followed by the USAO/DNJ when compiling the Jackson file, so that the Court may assess the adequacy of the search. If appropriate thereafter, the parties may renew their motions for summary judgment.

SO ORDERED.