**Michael L. DORSETT, Plaintiff,**

**v.**

**UNITED STATES DEPARTMENT OF THE TREASURY, United States Secret Service, Defendant.**

**Civil Action No. 00–1730 (RBW).**

United States District Court, District of Columbia.

March 10, 2004.

Michael L. Dorsett, Dallas, TX, pro se.

Lisa Barsoomian, U.S. Attorney's Office, Washington, DC, for Defendant.

### MEMORANDUM OPINION

WALTON, District Judge.

In this action, one of several filed by the *pro se* plaintiff Michael Dorsett,[1] plaintiff seeks records that he contends are maintained in the defendant's systems of records pursuant to the Freedom of Information Act, 5 U.S.C. § 552 (2000) ("FOIA") and Privacy Act, 5 U.S.C. § 552a (2000) ("PA"). Because the Court concludes that

---

**1.** The Court has already granted summary judgment to the defendant in one of plaintiff's other cases, Civil Action No. 00–2254. In a third case plaintiff filed, Civil Action No. 00–1914, the Court granted in part and denied in part the defendant's motion for summary judgment. The defendant in that case has filed a renewed motion for summary judgment, which the Court will resolve in a separate opinion in the near future.

the defendant has, for the most part, satisfied its obligations pursuant to the FOIA and the PA, it will grant in part, and deny in part the defendant's motion for summary judgment.

## I. FACTUAL BACKGROUND

At the time he filed this lawsuit, plaintiff was a federal prisoner incarcerated at the Federal Correctional Institution at Seagoville, Texas. Compl. ¶ 4.[2] On May 31, 2000, plaintiff submitted a FOIA/PA request to the defendant seeking "[a]ll records maintained in the agency's system of records related to requester." Defendant's Motion for Summary Judgment ("Def.'s Mot."), Exhibit ("Ex.") A (Declaration of Gary L. Edwards, Assistant Special Agent in Charge, FOIA/PA Office, United States Secret Service, dated October 11, 2000) ("Edwards Decl."), Ex. 1 (Plaintiff's FOIA Request). In a letter dated July 12, 2000, the defendant informed plaintiff that his request was received by the Secret Service on June 29, 2000, and that "[a] search for files responsive to [his] request [was] being conducted." Edwards Decl., Ex. 2 (Letter to Michael Dorsett from Gary L. Edwards dated July 12, 2000).[3] The defendant wrote a second letter to plaintiff on July 25, 2000, in which it stated that documents responsive to plaintiff's request had been located and were being reviewed. *Id.*, Ex. 3 (Letter to Michael Dorsett from Gary L. Edwards dated July 25, 2000).

On September 5, 2000, the agency produced to plaintiff copies of certain records responsive to his request, deleting information from some of these documents pursuant to several FOIA exemptions, and withholding 14 pages in their entirety. *Id.*, Ex. 7 (Letter to Michael Dorsett from Gary L. Edwards dated September 5, 2000).[4] In total, forty-nine documents were produced to plaintiff. *Id.*, Ex. 8 (Defendant's *Vaughn* Index);[5] Defendant's Memorandum of Points and Authorities in Support of Defendant's Motion for Summary Judgment ("Def.'s Mem.") at 1. The defendant also forwarded two documents, one to the State Department and another to the Federal Bureau of Investigations ("FBI"), because the documents originated with them. *Id.*, Ex. 5 (Letter to the State Department dated September 5, 2000); Ex. 6, (Letter to FBI dated September 5, 2000). The State Department subsequently released to the plaintiff the one document that had been forwarded to it in its entirety. Edwards Decl. ¶ 15. The document referred to the FBI was at issue in one of the other lawsuits filed in this Court by the plaintiff and summary judgment was granted to the FBI in that matter because it provided the plaintiff with the information he was entitled to receive. *Dorsett v. United States Dep't of Justice*, No. 00–2254, slip op. at 1 (Sept. 24, 2003).

Plaintiff filed this lawsuit on July 21, 2000, because the Secret Service had failed to respond to his request within the 20 days allotted by the FOIA. 5 U.S.C. § 552(a)(6)(A)(i).[6] The defendant has now moved for summary judgment.

---

2. References to "Compl." are to the Complaint for Declaratory and Injunctive Relief filed by plaintiff on July 2, 2000.

3. The July 12 letter also informed plaintiff that his request for a fee waiver was denied. Edwards Decl., Ex. 2. Plaintiff does not challenge the agency's denial of his request for a fee waiver.

4. The defendant claims that all records sought by plaintiff were protected pursuant to the PA, but processed plaintiff's request pursuant to the FOIA. Edwards Decl. ¶ 12.

5. *See Vaughn v. Rosen*, 484 F.2d 820, 826 (D.C.Cir.1973).

6. The defendant notes that plaintiff mailed his request to the Secret Service's address at

## II. ANALYSIS

### A. Standard of Review

██ The court may grant summary judgment when there is no genuine issue of material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 321–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In resolving a motion for summary judgment, all reasonable inferences that may be gleaned from the facts before the court must be construed in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In a FOIA case, to satisfy this standard, "the 'defending agency must prove that each document that falls within the class requested either has been produced, is unidentifiable, or is wholly exempt from the (FOIA's) inspection requirements.'" *Perry v. Block*, 684 F.2d 121, 126 (D.C.Cir.1982) (citation omitted). When reviewing an agency's treatment of a plaintiff's FOIA request, "the court shall determine the matter de novo, and may examine the contents of such agency records in camera to determine whether such records or any part thereof shall be withheld under any of the [FOIA's] exemptions[.] ... [T]he burden is on the agency to sustain its action." 5 U.S.C. 552(a)(4)(B); *see also Founding Church of Scientology of Washington, D.C., Inc. v. Nat'l Security Agency*, 610 F.2d 824, 830 (D.C.Cir.1979).

### B. Adequacy of Defendant's Search

██ The first question the Court will address in deciding whether summary judgment is proper is whether the agency conducted a proper search for records responsive to plaintiff's request. The "FOIA requires an agency responding to a FOIA request to conduct a reasonable search using methods which can be reasonably expected to produce the information requested." *Shores v. FBI*, 185 F.Supp.2d 77, 81–82 (D.D.C.2002) (citing *Campbell v. DOJ*, 164 F.3d 20, 27 (D.C.Cir.1998)). According to the Edwards Declaration, the defendant searched the Secret Service's Master Central Index ("MCI") for documents responsive to plaintiff's request. Edwards Decl. ¶ 8. The MCI is

> an on-line computer system used by all Secret Service field offices, resident offices, resident agencies, protective divisions, and headquarter divisions for a variety of applications. The MCI provides a system of record keeping of information for cases and subjects of record in investigative, protective, and administrative files maintained by the Secret Service. Individuals on whom the Secret Service maintains records are indexed on MCI by name, social security number, and/or date of birth.

*Id.* ¶ 9. Searches for information regarding plaintiff were conducted using "plaintiff's name, social security number, and date of birth...." *Id.* ¶ 8.

"[T]he competence of any records-search is a matter dependent upon the circumstances of the case...." *Founding Church of Scientology*, 610 F.2d at 834. Plaintiff contends that the defendant did not conduct an adequate search for responsive records for several reasons. First, plaintiff contends that defendant referred documents to the State Department and the FBI when the agency had the duty to produce those records. Plaintiff's Amended Memorandum of Points and Authorities in Opposition to Defendant's Motion for Summary Judgment ("Pl.'s Am. Opp'n") at 7, 20. However, the fact that this was

1800 G Street, N.W., Washington, D.C., however, the Secret Service had moved from that address in the summer of 1999. Edwards

Decl. ¶ 5. Therefore, the defendant did not receive plaintiff's request until June 13, 2000. *Id.*

done does not alone establish that the search was inadequate. Actually, it was the thoroughness of the search which unveiled the responsive documents that had been originated by the State Department and the FBI. Edwards Decl. ¶ 14. The documents were therefore forwarded to those agencies along with requests that they respond directly to the plaintiff regarding the information they had originated. *Id.* ¶¶ 15–16. The issue raised by defendant's referral is "whether the 'referral procedure result[ed] in the improper withholding . . . of [d]ocuments[.]'" *Maydak v. DOJ*, 254 F.Supp.2d 23, 40 (D.D.C. 2003) (Walton, J) (citing *Peralta v. United States Attorney's Office*, 136 F.3d 169, 175 (D.C.Cir.1998) (citing 5 U.S.C. § 552(a)(4)(B))). Because the plaintiff has received the referred document from the State Department, Edwards Decl. ¶ 15, and this Court has granted summary judgment to the FBI regarding the production of the documents referred to it, *Dorsett v. United States Dep't of Justice*, No. 00–2254, slip op. at 1 (Sept. 24, 2003), the answer to this question is no.[7] *See Crooker v. United States State Dep't*, 628 F.2d 9, 10, 11 (D.C.Cir.1980) ("The Freedom of Information Act does not require that the agency from which documents are requested must release copies of those documents when another agency possessing the same material has already done so. . . . Where the records have already been furnished, it is abusive and a dissipation of agency and court resources to make and process a second claim."). Next, plaintiff argues that the agency's search was inadequate because the defendant failed to include several documents that plaintiff knows exists. Pl.'s Am. Opp'n at 20. These documents include "Secret Service agents re-

ports and field notes"; "documents [that] originated with the Missouri Highway Patrol"; "records related to electronic surveillance"; and "transcripts referenced in defendant's own documents." *Id.* Defendant contends that its search for responsive records was complete and if there were relevant Secret Service reports and field notes that exist, "any material relating thereto should be maintained in the file that was searched in response to plaintiff's FOIA request." Defendant's Reply Memorandum in Support of Defendant's Motion for Summary Judgment ("Def.'s Reply") at 3.

"[A] search is not inadequate simply because it failed to yield every document that [a] Plaintiff seeks." *Shores*, 185 F.Supp.2d at 82 (citation omitted). Plaintiff does not challenge the "scope and method" used by defendant to conduct its search, *id.;* he simply alleges, based on his own belief, that more responsive documents exist. However, the Edwards declaration clearly explains the system of records the defendant searched, the identifying information used as the predicate for the search, and the scope of the search. This was sufficient to justify the search method utilized by the defendant in this case. *See Perry*, 684 F.2d at 127 ("[A]ffidavits that explain in reasonable detail the scope and method of the search conducted by the agency will suffice to demonstrate compliance with the obligations imposed by the FOIA."). The contents of the Edwards declaration convinces the Court that the defendant's search for responsive documents was adequate. *See id.* (noting that although agency's description of its search method "could have been more detailed," the

7. Defendant notes that the applicable regulations provide that in a situation where a document originated with another agency, the agency in possession of the document "shall" transfer the request "to the appropriate bu-

reau and the requester notified." 31 C.F.R. § 1.5(c)(1). This approach is essentially identical to the procedure approved by the District of Columbia Circuit in *McGehee v. CIA*, 697 F.2d 1095, 1111–12 (D.C.Cir.1983).

agency's search "was reasonably complete and thorough" because the agency's "affiants identified with reasonable specificity the system of records searched and the geographical location of those files."); *Shores,* 185 F.Supp.2d at 82 (granting summary judgment to the agency where although plaintiff claimed the agency "refused to send him documents responsive to his request[,]" the Court noted that plaintiff did not challenge the "scope and method" used by the defendants to search for documents); *Master v. FBI,* 926 F.Supp. 193, 196, 197 (D.D.C.1996) (holding that an agency's declarations that "set[ ] forth the procedures followed ... in responding to plaintiff's FOIA request, including a description of the systems records searched, an explanation of the FBI Central Records Systems files and how those files are accessed, and the results of the search of the manual and automated indices of the Central Records system[,]" were sufficient to "establish that the defendant performed an adequate search.").

## C. Adequacy of the Defendant's *Vaughn* Index

■■■ Second, the Court will address the adequacy of the defendant's submitted *Vaughn* index. The District of Columbia Circuit has held that an agency must provide "[a]n analysis sufficiently detailed" in support of any claimed exemptions. *Vaughn v. Rosen,* 484 F.2d at 820, 827 (D.C.Cir.1973). This analysis, which is termed a *Vaughn* index, is the method designed by the courts whereby non-disclosing parties in FOIA cases can present their reasons to the courts for not providing information that has been requested. *Id.* With this information, the Court is able to evaluate the legitimacy of the withholding of information without having to physically examine each of the documents on which withheld information is contained. *Id.* at 823; *Coastal States Gas Corp. v. Dep't of Energy,* 617 F.2d 854, 861 (D.C.Cir.1980). To be adequate, a *Vaughn*

index (1) "should be contained in one document ...."; (2) "must adequately describe each withheld document or deletion from a released document," and (3) "must state the exemption claimed for each deletion or withheld document, and explain why the exemption is relevant." *Founding Church of Scientology v. Bell,* 603 F.2d 945, 949 (D.C.Cir.1979).

Here, the defendant has submitted a *Vaughn* index which separately identifies each of the 49 documents at issue, provides a description of the documents, lists the applicable exemptions, and states the basis for the applicability of the claimed exemptions. *See* Def.'s Mot., Ex. 8, (*Vaughn* Index). In addition, the Edwards declaration provides a further analysis of the reasons for the defendant's claimed exemptions and the defendant has submitted for the Court's inspection the documents produced to the plaintiff, in redacted form. This record satisfies the requirements of a proper *Vaughn* index as it provides a sufficient basis for the Court, and the plaintiff, to evaluate the agency's claimed exemptions. *See Keys v. DOJ,* 830 F.2d 337, 349 (D.C.Cir.1987) (holding that government agency's *Vaughn* index was sufficient where it submitted declarations that "describe[d] in detail the contexts in which all the documents were collected[,]" and contained "a copy of every document, in redacted form, that appellant received ... and two lengthy affidavits discussing the redactions."); *Hinton v. Dep't of Justice,* 844 F.2d 126, 129 (3d Cir.1988) (stating, in dicta, that although there is "no set formula for a *Vaughn* index[,] ... the least that is required, is that the requestor and the trial judge be able to derive from the index a clear explanation of why each document or portion of a document withheld is putatively exempt from disclosure.") (citations omitted).

## D. Privacy Act Exemptions

The next issue the Court will address is whether the defendant properly invoked its PA exemptions. Defendant asserts that because the information responsive to plaintiff's request "was contained in a Protective Intelligence file located in the Secret Service's 'Protection Information Systems[,]'" the Privacy Act exempted this system of records pursuant to exemptions (j)(2), (k)(2) and (k)(3). Edwards Decl. ¶ 12. Plaintiff counters that defendant has not adequately justified its PA exemptions. Pl.'s Am. Opp'n at 20.

■ Exemption (j)(2) exempts from disclosure "any system of records within the agency," as long as the agency that maintains the system of records "performs as its principal function any activity pertaining to the enforcement of criminal laws...." 5 U.S.C. § 552a(j)(2). Defendant Secret Service's Exemption (j)(2) claim satisfies this requirement.[8] In addition, the records were maintained in the Secret Service's Protection Information Systems, which includes "a system of record keeping of information for cases and subjects of record in investigative, protective, and administrative files maintained by the Secret Service." Edwards Decl. ¶ 9.

■ The records also qualify for exemption pursuant to PA Exemption (k)(2), as there are regulations exempting the records from disclosure. *See* 5 U.S.C. § 552a(k)(2); 63 Fed.Reg. 69948, 69952 (Dec. 17, 1998). *See also Germosen v. Cox,* No. Civ.A. 98–1294, 1999 WL 1021559, at *19 (S.D.N.Y. Nov.9, 1999)

(holding Secret Service records were exempt from disclosure pursuant to PA Exemptions (j)(2) and (k)(2)). Plaintiff contends that Exemption (k)(2) should not be considered applicable because the exemption can not be relied upon in situations where "any individual [would be] denied any right, privilege, or benefit that he would otherwise be entitled...." 5 U.S.C. § 552a(k)(2). Plaintiff asserts that he "has been denied and continues to be denied rights[,] priviles [sic] and benefits to which he would be entitled ... [,]" but he fails to state what rights these include. Pl.'s Opp'n at 17. Accordingly, the Court concludes the records at issue were exempt from disclosure pursuant to PA Exemptions (j)(2) and (k)(2).[9]

## E. FOIA Exemptions

The defendant relies on several FOIA exemptions to justify its withholding and redaction of documents responsive to plaintiff's request. The Court will address each exemption separately.

### 1. Exemption 2

FOIA exemption 2 exempts from disclosure documents that are "related solely to the internal personnel rules and practices of an agency[.]" 5 U.S.C. § 552(b)(2). Courts have applied Exemption 2 to several categories of information: "Low 2" exemptions, which includes "trivial administrative data such as file numbers, mail routing stamps, initials, data processing notations, and other administrative markings...." *Coleman v. FBI,* 13 F.Supp.2d

---

8. Plaintiff correctly asserts that defendant has failed to include any statement regarding the fact that its principal function involves activity related to the enforcement of the criminal laws, a prerequisite for the invocation of PA Exemption (j)(2). 5 U.S.C. § 552a(j)(2). Although the Court concludes that this fact may be reasonably inferred from the existing record, defendant would be well-advised to en-

sure that such a minor detail is addressed in any future declarations that are submitted in support of this exemption.

9. Due to the Court's resolution of this issue, it need not determine whether the records also qualify for exemption pursuant to PA Exemption (k)(3).

75, 78–79 (D.D.C.1998) (citing *Lesar v. DOJ*, 636 F.2d 472 (D.C.Cir.1980)). The second category, classified as " 'high 2' " exemptions, involve[ ] predominately internal documents the disclosure of which would likely circumvent agency regulations and statutes." *Id.* (citing *Crooker v. Bureau of Alcohol, Tobacco & Firearms*, 670 F.2d 1051, 1074 (D.C.Cir.1981)).

■ As plaintiff points out, defendant claims a "high 2" exemption in this case, as it seeks to withhold "internal protective investigative information." Edwards Decl. at 7. This information includes "an internal investigation document used by the Secret Service to analyze and profile factual information concerning individuals who have come to the attention of the Secret Service as having a direction of interest toward a Secret Service protectee and/or as a possible potential threat toward a Secret Service protectee...." *Id.* Defendant asserts that each piece of information "is used internally within the Secret Service to investigate potential threats to Secret Service protectees[,]" and therefore although in isolation the disclosure of the information would be "relatively harmless[,]" in the aggregate, "the release of this information could benefit those attempting to violate the law and avoid detection by the Secret Service." Def.'s Mem. at 4–5. Defendant does not cite any legal authority that has addressed the precise type of information at issue.

The District of Columbia Circuit Court has held "that the words 'personnel rules and practices' encompass not merely minor employment matters, but may cover other rules and practices governing agency personnel, including significant matters like job training for law enforcement personnel." *Crooker*, 670 F.2d at 1056. The Court has also held that "[t]he word 'internal' in Exemption 2 plainly limits the exemption to those rules and practices that affect the internal workings of an agency.

'Related solely to' limits the exemption to those matters that are truly internal, and not of legitimate public interest." *Id.* (footnote omitted). In *Crooker*, the Court of Appeals extensively analyzed the purpose and legislative history of Exemption 2. The Court concluded that the exemption protected from disclosure portions of an agent training manual of the Bureau of Alcohol, Tobacco and Firearms because "the manual [was] used for predominantly internal purposes; it [was] designed to establish rules and practices for agency personnel, i.e., law enforcement investigatory techniques; it involves no 'secret law' of the agency; and it is conceded that public disclosure would risk circumvention of agency regulations." *Crooker*, 670 F.2d at 1073.

In this case, although the internal investigative document is not a manual *per se*, it is used by the Secret Service to "analyze and profile factual information concerning individuals who have come to the attention of the Secret Service...." Edwards Decl. at 7. As such, the documents could be used to gain insight into the methods and criteria the Secret Service utilizes to identify and investigate persons of interest, and could alter such individuals' behavior to avoid detection. *Coleman*, 13 F.Supp.2d at 79 (holding that symbols and numbers used to identify confidential informants qualified as a " 'high 2' exemption" because the information "would allow criminals to redirect their activities and avoid legal intervention...."). Further, the documents are "used internally within the Secret Service to investigate potential threats to Secret Service protectees." Edwards Decl. at 7, ¶ 25.A; *see Crooker*, 670 F.2d at 1074 ("[W]e hold that if a document for which disclosure is sought meets the test of 'predominant internality,' and if disclosure significantly risks circumvention of agency regulations or statutes, then Exemption 2 exempts the material from mandatory dis-

closure."). Here, the Court finds that granting an exemption for the documents described by the defendant would be in accordance with the intent underlying Congress' enactment of Exemption 2, which included the desire to prevent the "release of materials containing law enforcement investigative techniques." *Crooker,* 670 F.2d at 1062; *see id.* at 1074 ("Congress evidenced a secondary purpose when it enacted FOIA of preserving the effective operation of governmental agencies."). Accordingly, the Court concludes that the defendant properly withheld its investigative profile documents pursuant to Exemption 2.

### 2. Exemption 5

■ FOIA Exemption 5 protects from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency[.]" 5 U.S.C. § 552(b)(5). Because the exemption "incorporates all civil discovery rules[,]" courts have construed the exemption to include "three traditional privileges[:] . . . the deliberative-process privilege, the attorney work-product privilege and the attorney-client privilege." *Gutman v. DOJ,* 238 F.Supp.2d 284, 292 (D.D.C.2003) (citing *Nat'l Labor Relations Bd. v. Sears, Roebuck & Co.,* 421 U.S. 132, 149, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975)). Defendant has invoked FOIA Exemption 5, in conjunction with Exemptions 2 and 7(E), to withhold "intra-agency preliminary evaluation[s] of potential threats to Secret Service protectees[,]" as well as "statements made by Special Agents . . . concerning their observations and opinions [which] . . . are used as part of the basis for preliminary evaluations of the degree of danger presented by an individual."

Edwards Decl. at 8, ¶ 25.B. In opposition, plaintiff argues defendant has failed to show "that documents 32, 36 (in full) 37, and 38 would be exempt under civil or criminal discovery rules, and since defendant's *Vaughn* index is lacking, the [plaintiff] nor the Court has any way to properly evaluate this argument." Pl.'s Am. Opp'n at 13.[10]

As to document 32, the defendant describes this document as an "[e]leven page Secret Service teletype dated April 18, 1997, regarding the plaintiff and other subjects[,]" and justifies its withholding under Exemption 5 because the document provides a "[p]reliminary evaluation of plaintiff and other third party subjects as to whether they present[ed] a danger to Secret Service protectees." *Id.* In addition, the document includes "[s]tatement[s] of observations and opinions made by [the] Special Agent leading to evaluations[.]" Def.'s Mot., Ex. 8 (*Vaughn* Index), at 13. Document 36 is similarly described as a "[s]even page Secret Service profile sheet printed March 11, 1999, for a third party[,]" containing the "opinion and observations of Special Agents leading to evaluation." *Id.* at 15. Document 37 is a "[t]wo page Secret Service teletype dated September 11, 1997, regarding the arrest of a third party[,]" and, as related to Exemption 5, contains a Special Agent's "[p]reliminary evaluation as to whether plaintiff and third party subjects present a danger to Secret Service protectees." *Id.* at 16. Finally, document 38, a "[f]ive page Secret Service teletype dated June 2, 1997," contains a Special Agency's opinion concerning plaintiff and third parties. *Id.* at 17.

Clearly, in that the above-referenced documents provide the opinions and evaluations of Special Agents concerning the

---

10. The Court has previously concluded that the defendant's *Vaughn* index provides a sufficient basis upon which the Court and the plaintiff can evaluate the defendant's claimed exemptions. *See supra* at 34–35.

plaintiff's and other parties' level of threat to Secret Service protectees that were made prior to the initiation of any criminal proceedings, the documents fall within Exemption 5's deliberative-process protection. Exemption 5 has been "generally ... accepted ... to protect documents containing advisory opinions and recommendations or reflecting deliberations comprising the process by which government policy is formulated." *Mead Data Central, Inc. v. United States Dep't of Air Force,* 566 F.2d 242, 256 (D.C.Cir.1977). The documents here clearly satisfy the deliberative process privilege standard as they are "predicisional," (*see* Edwards Decl. at 8, ¶ 25.B (documents that contain "preliminary evaluations of the degree of danger presented by an individual[ ]")), and the documents are "deliberative," as they contain Secret Service agents' opinions assessing the level of threat posed by plaintiff and third parties. *See Jackson v. United States Attorneys Office, District of New Jersey,* 293 F.Supp.2d 34, 40 (D.D.C. 2003) (quoting *Coastal States,* 617 F.2d at 866). Applying the exemption here will protect "the quality of administrative decision-making [which] would be seriously undermined if agencies were forced to 'operate in a fishbowl' because the full and frank exchange of ideas on legal or policy matters would be impossible." *Mead Data Central, Inc.,* 566 F.2d at 256. Thus, the agency's evaluation of plaintiff and others must be protected as it contains opinions and evaluations used by the agency in determining whether plaintiff and third parties posed a threat to individuals protected by the agency. *See id.* at 257 (holding that agency documents, "to the extent [they] ... reflect[ed] the views and opinions of Air Force staff ... [were] exempt from disclosure under the FOIA by section 552(b)(5))." (footnote omitted); *Jackson,* 293 F.Supp.2d at 40 (holding that Assistant United States Attorney's ("AUSA") notes regarding "the personal opinions of the investigating AUSA, such as his or her evaluation of the case and reasons the [United States Attorney's Office] should decline prosecution," were "part and parcel of the [agency's] decisionmaking processes ... [,]" and therefore protected from disclosure under Exemption 5.); *Gutman,* 238 F.Supp.2d at 293 (holding that documents "prepared ... to assist the Deputy Attorney General's decision regarding the government's un-recusal from the plaintiff's criminal investigation[,]" were protected from disclosure pursuant to Exemption 5's deliberative process exemption). Accordingly, the Court concludes that the defendant properly invoked Exemption 5.

### 3. Exemption 7(C)

Exemption 7(C) protects from disclosure "records or information compiled for law enforcement purposes, but only to the extent that ... production ... could reasonably be expected to constitute an unwarranted invasion of personal privacy...." 5 U.S.C. § 552(b)(7). "Exemption 7(C) insulates from release records whose disclosure could reasonably be expected to constitute an unwarranted invasion of privacy.... As the use of the term 'unwarranted' implies, Exemption 7(C) requires the Court to balance the public interest in disclosure against the privacy interests involved." *Whittle v. Moschella,* 756 F.Supp. 589, 595 (D.D.C.1991) (citing *Senate of Puerto Rico v. DOJ,* 823 F.2d 574, 587 (D.C.Cir.1987)). It is the plaintiff's burden to demonstrate "the substantial and compelling nature of the public interest to be served by disclosure." *Id.* (citation omitted).

 Defendant has invoked Exemption 7(C) to "withhold[ ] the names of Secret Service special agents, Intelligence Research Specialists (IRSs), other Secret Service personnel, FBI agents, a Federal Marshall Specialist, and local law enforce-

ment personnel." Edwards Decl. at 10. This type of information is routinely considered protected by Exemption 7(C). *See, e.g., Shores,* 185 F.Supp.2d at 83 (holding that the FBI properly relied on Exemption 7(C) "to withhold the names and/or identifying information regarding FBI Special Agents...."); *Tamayo v. DOJ,* 932 F.Supp. 342, 344 (D.D.C.1996) (holding that the defendant agencies properly "invoked Exemption 7(C) of the FOIA to protect the identities of: agents and support personnel of the FBI, DEA, and the Customs Service; nonfederal law enforcement officers mentioned in records of the DEA and the Customs Service; nonfederal law enforcement officers mentioned in records of the DEA and the Customs Service; and third parties of investigative interest to the FBI, DEA, and the Customs Service."); *Hatcher v. DOJ,* 910 F.Supp. 1, 3 (D.D.C.1995) (upholding the agency's reliance on "Exemption (b)(7)(C) ... to protect the identities of and personal information about third party individuals, special agents, government employees and local law enforcement personnel who participated in the investigation and prosecution of the [p]laintiff."); *Albuquerque Publ'g Co. v. DOJ,* 726 F.Supp. 851, 855 (D.D.C.1989) (holding that documents related to surveillance conducted during a drug investigation that contained " 'names, addresses, and phone numbers which would reveal the identity and disclose information about persons who were implicated, involved or associated with' the surveillance ..." were exempt from disclosure pursuant to Exemption 7(C)).

Plaintiff does not take issue with the substance of the defendant's basis for invoking Exemption 7(C); rather, he opines that the public interest in this case outweighs the privacy interests of the individuals the defendant seeks to protect. Pl.'s Am. Opp'n at 15. In this regard, plaintiff asserts that he "is requesting information that will shed light on government actions related to illegal activities ... and the attempts by agents to cover them up." *Id.* Therefore, he contends he needs "[a]ccess to [the] names and addresses of private individuals appearing in these files to confirm or deny reports of illegal activity." *Id.*

However,"[g]iven the substantial privacy interests in the information withheld in this case, the public interest in disclosure of the identity of the individuals must be great in order to justify the release of the information." *See Williams v. FBI,* 822 F.Supp. 808, 813 (D.D.C.1993). Here, there is no public interest that outweighs the privacy interests at stake. It is clear that the individuals referenced in the documents at issue have a clear interest in not having their identities revealed. *See* Edwards Decl. at 11. Furthermore, it is not apparent how disclosure of the names and identifying information about these individuals will shed light on the agency's alleged malfeasance in this case, and thus disclosure is primarily in plaintiff's, not the public's, interest. *See, e.g., Burke v. DOJ,* No. Civ.A. 96–1739, 1999 WL 1032814, at *4 (D.D.C. Sept.30, 1999) ("The courts have consistently refused to recognize any public interest in disclosure of information to assist a convict in challenging his conviction.") (citations omitted); *Williams,* 822 F.Supp. at 813 (stating that there was no public interest in the disclosure of documents pertaining to a criminal investigation of the plaintiff where "[t]he information contained in the withheld portions of the relevant documents will *not* 'shed [ ] light on an agency's performance of its statutory duties ...' " and was not " 'probative of an agency's behavior or performance.' ... Absent evidence of such agency misconduct, an agency need not disclose the names and identifying descriptions of individuals supplying information to the agency in the law enforcement context.")

(emphasis in original) (citations omitted); *Albuquerque Publ'g Co.*, 726 F.Supp. at 856 (holding that there was no compelling public interest in the disclosure of documents pertaining to surveillance conducted in connection to a drug investigation where the plaintiff sought to learn " 'the complete truth' " about what happened.) (citation omitted). Accordingly, the Court concludes that the agency properly withheld the information at issue pursuant to Exemption 7(C).[11]

## F. Segregability

"It has long been a rule in this Circuit that non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions." *Mead Data Central, Inc.*, 566 F.2d at 260. Section 552(b) of the FOIA incorporates this requirement into the Act, and provides that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt...." 5 U.S.C. § 552(b). The District of Columbia Circuit has expressly held that "a district court has the obligation to consider the segregability issue *sua sponte*, regardless of whether it has been raised by the parties...." *Johnson v. Exec. Office for United States Attorneys*, 310 F.3d 771, 776 (D.C.Cir.2002) (citation omitted); *see also Kimberlin v. DOJ*, 139 F.3d 944, 946 (D.C.Cir.1998) (remanding case to district court because it "failed to determine whether any of the information could be segregated and disclosed without compromising the nondisclosable material....").

To satisfy its burden of "demonstrat[ing] that all reasonably segregable material has been released, the agency must provide a 'detailed justification' for its non-segregability.... However, the agency is not required to provide so much detail that the exempt material would be effectively disclosed." *Johnson*, 310 F.3d at 776 (citations omitted). The agency's segregability explanation in this case is wholly insufficient. The segregability issue is addressed in the Edwards declaration as follows:

> The Secret Service has released to plaintiff all material that could be reasonably segregated from withheld material. A review of the responsive documents shows that no further information can be segregated without releasing information properly withheld under the FOIA and the Privacy Act. In addition, to the extent any further material could be segregated, it would be minimal information with little or no value to the plaintiff, and its segregation would be overly burdensome.

Edwards Decl. ¶ 22.[12] This justification does not provide the "detailed justification" required to establish that all segregable material has been disclosed. In *Johnson*, for example, the agency, in addition to a detailed *Vaughn* index, provided an affidavit to the Court wherein the affiant "explained that she personally conducted a line-by-line review of each document withheld in full and determined that 'no documents contained releasable information which could be reasonably segregated from the nonreleasable portions.' " 310

---

11. While the defendant also relied on Exemption 7(E) to withhold information, because those withholdings were made in conjunction with Exemptions 2 and 5, which the Court has already held were properly invoked, the Court will not separately address Exemption 7(E). Furthermore, plaintiff's arguments regarding this claimed exemption are the same as the arguments the Court rejected regarding Exemption 5. *See* Pl.'s Am. Opp'n at 18.

12. These assertions are reiterated in defendant's memorandum of law that has been submitted in support of its motion for summary judgment. Def.'s Mem. at 21–22.

F.3d at 776. Similarly, in *Gutman*, the Court held that the defendant had adequately addressed the segregability issue where, in addition to providing a detailed *Vaughn* index that included "each document's issue date, subject matter, authorship, the intended recipient, the exemption [applicable] ... and an explanation as to why the exemption applie[d] to the document[,]" the defendant also provided two affidavits, one in which the affiant "avow[ed] that [he] evaluated each page of every document for segregability and, after making the necessary deletions or excisions, released them accordingly." 238 F.Supp.2d at 296. The defendant's segregability explanation here does not provide the degree of detail as the *Johnson* and *Gutman* cases held to be sufficient. The defendant's segregability discussion is similar to the one held to be insufficient in *Mead Data Central, Inc.*, where the defendant had submitted an affidavit in which it stated "that there were no factual portions ... [of the documents] ... which could be reasonably segregated." 566 F.2d at 260 (internal citation marks and citation omitted). The Court held that this conclusory statement was insufficient, when provided in conjunction with an overly broad construction of the exemption being claimed by the agency. *Id.* The Court noted that, "[i]n addition to a statement of its reasons, an agency should also describe what proportion of the information in a document is non-exempt and how that material is dispersed throughout the document." *Id.* at 261 (footnote omitted).

Here, as in *Mead Data Central, Inc.*, the defendant has failed to provide the level of detail necessary to ensure that no segregable portions of the fourteen documents withheld could not be released to the plaintiff. Nor does the defendant's *Vaughn* Index provide any detail regarding the segregability of the withheld documents. "[U]nless the segregability provision of the FOIA is to be nothing more than a preca-

tory precept, agencies must be required to provide the reasons behind their conclusions in order that they may be challenged by FOIA plaintiffs and reviewed by the courts." *Mead Data Central, Inc.*, 566 F.2d at 261. Because of its inadequate and conclusory segregability explanation, the Court will deny the defendant's motion for summary judgment in part and order the defendant to submit a renewed motion for summary judgment accompanied by an affidavit that solely addresses the segregability issue in accordance with the foregoing analysis.

## G. Bad Faith

■ Plaintiff makes several allegations which he argues support a finding that the agency has acted in bad faith and which requires the denial of summary judgment at this time. The Court finds each of plaintiff's arguments in this regard without merit. First, plaintiff argues that the defendant has indicated in some of its responses that it received plaintiff's PA/FOIA request on June 29, whereas in a document submitted to the Court it stated that the plaintiff's request was received on June 13, 2000. Pl.'s Am. Opp'n at 22. This inconsistency is not material, as it does not alter the fact that plaintiff had waited the statutory period necessary prior to initiating this lawsuit and defendant is not alleging that plaintiff's lawsuit was filed prematurely. In any event, defendant contends in the Second Declaration of Mr. Edwards that "[t]his discrepancy occurred because the original date stamp placed on the plaintiff's request by [his] office shows the date of June 29, 2000[,]" but, upon further review, it was discovered by someone in Mr. Edwards office "that the log-in sheet ... lists the date of receipt of plaintiff's request as June 13, 2000, even though the date stamp on the request letter itself is June 29, 2000." Second Declaration of Gary L. Edwards ("Edwards Second Decl.") ¶ 6. This explanation is completely reasonable and negates

plaintiff's assertion that bad faith can be inferred.

Second, plaintiff points to the fact that correspondence he received previously from the defendant dated July 12, July 25, and September 25, 2000, were signed by a "Jeanneth Williams" and a "Latita M. Huff," however, in the documents submitted to the Court, the documents are signed by Gary L. Edwards. Pl.'s Opp'n at 22. Mr. Edwards explains that Ms. Williams and Ms. Huff are members of his staff and "[d]uring the normal processing of FOI/PA requests ... an authorized subordinate may sign an original letter sent to a requester. However, the office file copy of a letter signed by a subordinate bears [Mr. Edwards'] signature stamp[,]" and therefore, because the defendant submitted copies of the letters from the office file to the Court, they bear Mr. Edwards signature. Edwards Second Decl. ¶ 7. Again, the Court does not find this situation material or even evidence suggesting bad faith. This is especially so since plaintiff does not aver that the substance of the letters has been changed, nor does he provide any explanation regarding how he has been prejudiced or how what occurred impugns the agency's justifications for its disclosure decisions.

Finally, plaintiff asserts that Mr. Edwards states in his declaration that plaintiff's FOIA request was sent by regular mail, although it was actually sent via certified mail. Pl.'s Opp'n at 23. While Mr. Edwards acknowledges this error, he contends that "FOI/PA requests received in [his] office are treated identically and processed no differently regardless of the form of original conveyance to the Secret Service." Edwards Second Decl. ¶ 5. Again, plaintiff fails to convey to the Court, and the Court cannot discern any plausible reason why this error is material to whether the defendant conducted a reasonable search for records responsive to plaintiff's request and whether the defendant has properly produced responsive documents and invoked its claimed exemptions. Further, the error does not support a finding of bad faith.

For all of the reasons set forth above, the Court concludes that plaintiff has not demonstrated any justification for the Court to hold that the defendant has acted in bad faith. *See Gutman*, 238 F.Supp.2d at 291–92 (rejecting plaintiff's claim that agency acted in bad faith and therefore should not be granted summary judgment. "[T]he court believes that the defendant conducted adequate searches reasonably expected to produce information responsive to the plaintiff's FOIA request.... The court therefore is not persuaded by the plaintiff's bad-faith accusations and concludes that the defendant did not act in bad faith.") (citations omitted).

### H. Additional Relief Sought by Plaintiff

 In his complaint, plaintiff seeks relief above and beyond disclosure of the requested documents. Specifically, plaintiff seeks "an injunction to prevent the ... Secret Service from not responding to FOIA/PA requests and not taking any action honoring or denying the request[,]"; "a written finding that the circumstances surrounding withholding raise questions whether there has been arbitrary or capricious agency action and make a referral of the matter to the Merit Systems Protection Board for investigation...." Compl. at 2. However, the Court is only permitted to make an arbitrariness or capriciousness finding, which would require referral of the matter to the Merit Systems Protection Board, if it "order[ed] the production of any agency records improperly withheld ... [,]" 5 U.S.C. § 552(a)(4)(F), something the Court has not done here. Regarding the first request, the FOIA only provides this Court with jurisdiction to "enjoin the agency from withholding agency records

and to order the production of any agency records improperly withheld." 5 U.S.C. § 552(a)(4)(B). The Court is "not authorized to make advisory findings of legal significance on the character of the agency conduct vis-a-vis any requester of information. In sum, if [the Court is] convinced that [defendant] ha[s], however belatedly, released all nonexempt material, [the Court has] no further judicial function to perform under the FOIA." *Perry*, 684 F.2d at 125.

## III. CONCLUSION

For all of the reasons set out above, the Court concludes that the defendant has conducted an adequate search for responsive documents, has submitted a sufficient *Vaughn* index, and has appropriately asserted the applicability of the claimed exemptions. However, because the defendant has not provided a sufficiently detailed justification regarding the non-segregability of the documents that were withheld in their entirety, the Court concludes that its request for summary judgment must be denied in part. Upon submission to the Court of a renewed motion for summary judgment, including an affidavit or declaration that adequately addresses this issue, the Court will re-evaluate the defendant's request for summary judgment in this matter.

**SO ORDERED** on this 10th day of March, 2004.[13]

### ORDER

In accordance with the Court's Memorandum Opinion that accompanies this Order, it is hereby

**ORDERED** that defendant's motion for summary judgment [# 10] is granted in part, and denied in part. Defendant is granted summary judgment as it pertains to the adequacy of the search it performed, the sufficiency of its *Vaughn* Index, and its

invocation of its Privacy Act and Freedom of Information Act exemptions. Summary judgment is denied as it pertains to defendant's segregability analysis. It is further

**ORDERED** that defendant shall file a renewed motion for summary judgment within 30 days of this Order, which shall include an affidavit or other documentation setting forth its segregability analysis as it relates to the documents withheld in their entirety. It is further

**ORDERED** that plaintiff may file a response to the defendant's pleading within 30 days after the defendant's pleading is filed. It is further

**ORDERED** that defendant may file a reply to plaintiff's pleading within 5 days after plaintiff's response is filed.

**SO ORDERED** on this 10th day of March, 2004.

13. An order consistent with the Court's ruling accompanies this opinion.